## JONES v. NEW YORK LIFE INS. CO.

### No. 1447. Opinion Filed March 19, 1912.

### (122 Pac. 702.)

1. **INSURANCE—Forfeiture—What Law Governs.** Where an application for life insurance provided that the contract contained in the policy and the application "shall be construed according to the law of the state of New York, the place of said contract being agreed to be the home office of said company in the city of New York," the provisions of the New York law, requiring a notice to be given as a condition precedent to forfeiting or lapsing the policy, apply to and govern the policy issued; and the policy remains in force until notice is given, or until it is cancelled by agreement of the parties, notwithstanding a premium is not paid when due, and notwithstanding a provision in the policy to the effect that, if any premium is not paid when due, the policy shall become void, and all payments previously made shall remain the property of the company.

2. **SAME.** Where, by stipulation contained in the application, the law of the state of New York applies to and governs a life insurance policy, and where the policy provides that the company will make loans on it, and that interest shall be paid on the loan, and where the loan agreement provides that all the conditions, limitations, and requirements of the policy, except as expressly modified in the loan contract, remain in force, the policy cannot be forfeited for nonpayment of the interest on the loan, or non-payment of a premium, or both, without notice, as required by the New York law, although the loan contract also provides "that in the event of default in payment of said interest, or of any premium on said policy, for one month after they shall respectively become due said party of the first part [company], which is hereby irrevocably appointed attorney for that purpose, is hereby authorized at its option to cancel said policy and its accumulations for the customary cash surrender value," and, retaining the loan and other indebtedness, to pay the balance of the cash surrender value to the insured.

3. **SAME—Actions on Policies—Burden of Proof.** The burden is upon the company, in a suit upon a life insurance policy, to show that it has given notice of forfeiture in accordance with the law of New York.

4. **SAME—Question for Jury.** Evidence in this case held sufficient to require the submission to the jury of the question whether or not the insured was in such a mental condition as to be incapable of agreeing to a cancellation of a life insurance policy.

5. **SAME—Conditions Precedent—Tender.** It is not necessary to tender money received from a life insurance company in settle-

ment of the excess of the cash surrender value over a loan on the policy before bringing suit on the policy, where it is certain the tender will be refused.

(Syllabus by Rosser, C.)

*Error from District Court, Logan County;*
*Stilwell H. Russell, Judge.*

Action by Mary G. Jones against the New York Life Insurance Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*Dale, Bierer & Hegler,* for plaintiff in error.

*S. S. Lawrence, John H. Burford,* and *James H. McIntosh,* for defendant in error.

Opinion by ROSSER, C. This is a suit by Mary G. Jones against the New York Life Insurance Company to recover upon a certain insurance policy issued by the company March 1, 1894, on the life of Edgar W. Jones for $2,500.

The premiums were paid each and every year until and including March 1, 1903. The premium was not paid March 1, 1904. The policy provided, among other conditions and provisions, that the company would make loans on the policy at the fifth or any subsequent anniversary of the policy within the accumulation period, provided that all premiums were paid in full, and that the policy should be assigned to the company as collateral security for any loan made. The policy also provided that "all premiums are due and payable at the home office of the company. * * * If any premium is not thus paid on or before the day when due, then (except as hereinafter otherwise provided) this policy shall become void, and all payments previously made shall remain the property of the company." The policy also provided for grace of one month in the payment of premiums, subject to interest charges, etc. The policy also had the following nonforfeiture clause:

"After this policy shall have been in full force three full years, in case of nonpayment of any premium subsequently due, and upon the payment within thirty days thereafter of any in-

debtedness to the company on account of this policy, and provided the policy has not been terminated by death within the month of grace allowed in the payment of premiums (1) the insurance will be extended for the face amount, as provided in the table below; or (2) on demand made within six months after such nonpayment of premium due, with surrender of this policy, paid up insurance will be issued for the reduced amount provided in the said table; or (3) the policy will be reinstated within the said six months, upon payment of the overdue premium, with interest at the rate of five per cent. per annum, if the insured is shown by evidence, satisfactory to the company, to be in good health."

The application for the policy contained the following agreement:

"That the contract contained in such policy and in this application shall be construed according to the law of the state of New York, the place of said contract being agreed to be the home office of said company in the city of New York."

In December, 1899, the insured, Edgar W. Jones, borrowed $122 from the company, giving his note therefor, the note also being signed by the beneficiary, Mrs. Mary G. Jones, and the policy was by them delivered to the company as security for the loan. The note was renewed from time to time, and became due on the 1st of March, 1904, at the same time that the premiums became due. Neither the note nor the interest was paid. After some negotiations between the company and the insured, the company, on the 14th of October, 1904, computed the cash value of the policy, and deducted therefrom the amount due upon the note, including interest thereon for one month after it became due, and mailed to Edgar W. Jones a check for $46.25, the difference in the amount due upon the note and the cash value of the policy at the time upon which the computation was based.

Edgar W. Jones died on November 4, 1904, and his mother, the beneficiary in the policy, afterwards brought this suit. At the close of the plaintiff's testimony, defendant demurred to the evidence, and the trial court sustained the demurrer, and rendered judgment thereon in favor of the defendant. This appeal

is taken from that judgment. The case is well briefed upon both sides. The material question in the case is whether the company had the right to cancel the policy upon the nonpayment of the premium and interest on the note.

The plaintiff contends that the company could not cancel or forfeit the policy without first giving notice, as required by section 92 of the New York insurance law (Consol. Laws 1909, c. 28), and that, upon default in payments the policy remained in force, no notice of intention to forfeit having been given. It is also contended that, no notice of forfeiture having been given, it required an agreement of the parties to cancel the policy, and that Edgar W. Jones was in such a mental and physical condition as to be incapable of consenting to the cancellation.

Section 92 of the New York insurance law is as follows:

"No Forfeiture of Policy without Notice. No life insurance corporation doing business in this state shall declare forfeited, or lapsed, any policy hereafter issued or renewed, and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited, or lapsed, by reason of nonpayment when due of any premium, interest or installment or any portion thereof required by the terms of the policy to be paid, unless a written or printed notice stating the amount of such premium, interest, installment, or portion thereof, due on such policy, the place where it should be paid, and the person to whom the same is payable, shall be duly addressed and mailed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known post-office address, postage paid by the corporation, or by an officer thereof, or person appointed by it to collect such premium, at least fifteen and not more than forty-five days prior to the day when the same is payable. The notice shall also state that unless such premium, interest, installment, or portion thereof, then due, shall be paid to the corporation, or to a duly appointed agent or person authorized to collect such premium by or before the day it falls due, the policy and all payments thereon will become. forfeited and void except as to the right to a surrender value or paid up policy as in this chapter provided. If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of

the policy in respect to the time of such payment; and no such policy shall in any case be forfeited, or declared forfeited, or lapsed, until the expiration of thirty days after the mailing of such notice."

It is claimed by the defendant that the New York law is in conflict with certain provisions of the policy, and also with the loan contract. It is further contended that, as the loan contract was an independent, separate agreement, made subsequent to the execution of the policy, it is not governed by the New York law, and that it constitutes a waiver of the provisions of the New York law, or a change in the conditions of the policy in that regard, so that the New York law does not apply to the case.

The policy contained a stipulation for loans by the company upon conditions as follows:

"First. That premiums are paid in full to the time when the loan is made, including the premium for the entire insurance year then beginning.

"Second. (Stating amount to be loaned at various periods.)

"Third. That the policy shall be duly assigned to the company as collateral security for the loans, and deposited at the home office.

"Fourth. That interest at the rate of five per cent. per annum shall be paid upon all such loans at the anniversary of the insurance next succeeding, and annually thereafter until the loans are paid off.

"Fifth. That the loans shall be for such time as the borrower may elect, not longer however, than to the end of the accumulation period. (Any indebtedness to the company, including any balance of the current year's premium remaining unpaid will be deducted in any settlement of this policy or of any benefit thereunder.)"

This provision with reference to loans precedes the non-forfeiture clause in the policy, and also precedes the provision that the policy shall be construed according to the law of the state of New York.

So much of the loan contract as is material in this case is as follows:

"(4) That in the event of default in payment of said interest or of any premium on said policy, for one month after they

shall respectively become due, said party of the first part, which is hereby irrevocably appointed attorney for that purpose, is hereby authorized at its option to cancel said policy and its accumulations, for the customary cash surrender value then allowed by said party of the first part for the surrender of policies of this class, said party of the first part in that case being liable to said party of the second part for the return of the balance only of said cash surrender value, after deducting said loan and accrued interest.

"(5) That in the settlement of any claim or any benefit under said policy before said loan with accrued interest shall have been fully paid, said party of the first part shall be liable to said party of the second part for the return of the balance only of the proceeds of said policy after deducting said loan and accrued interest and any other indebtedness.

"(6) That any notice under this agreement may be given either personally or by mailing it at the post office, addressed to the office or last known place of residence of said party of the second part, and that any notice so mailed shall be deemed to have been served on the day following the day it was deposited at said post office.

"(7) That all the conditions, limitations, and requirements of said policy, except as herein expressly modified, remain in full force."

The New York law, in section 92, quoted above, has been construed by the Supreme Court of that state, in the case of *Strauss v. Union Central Life Ins. Co.*, 33 Misc. Rep. 333, 67 N. Y. Supp. 509. In that case, the company issued a policy to Isaac Levy August 15, 1893, which was assigned to the plaintiff, Strauss, September 16, 1893, by written assignment. Strauss gave notice to the company that the policy had been assigned to him. Levy, the insured, gave his address to the company as 580 Madison street, Brooklyn, and afterwards changed his residence to another street in Brooklyn; but the company received no notice after the change. On July 10, 1899, the company addressed and mailed a written notice to the insured that the annual premium of $606 would be due on the following August 15th, and that if then not paid the policy would become forfeited and void. No notice was sent to the plaintiff, the assignee, though the company had his address. On August 15th, the plaintiff

paid the company $100 in cash on premiums, and gave his note for $506 for the balance, payable in three months. On November 17th, the plaintiff paid the company $163.59, and gave a new note for $350, payable in three months. Each of the notes contained a provision that the "said policy," including all conditions therein for the surrender, or continuance as a paid-up term policy, should, "without notice to any party or parties interested therein, be null and void on the failure to pay this note at maturity." The $350 was not paid at maturity. The plaintiff offered payment ten days later; but the company refused it, on the grounds that the policy was forfeited. · The court, by Mr. Justice Gaynor, held that it was the duty of the company to notify the assignee before forfeiture, and required the company to accept payment of the note and to reinstate the policy. The judgment of the Supreme Court was affirmed by the Court of Appeals of New York, in 170 N. Y. 349, 63 N. E. 347. Mr. Justice O'Brien, speaking for the Court of Appeals, said:

"There were eight provisions or conditions indorsed upon the policy, one of which provided that it should be null and void in case any of these conditions were violated by the insured, and that in such case all payments and accrued profits should be forfeited to the company, except as therein provided. It was provided by the policy that in case the insured failed to pay the premium, or any note given to the company for the same, when due, that the contract should cease and terminate. The last or eighth condition indorsed upon the policy provided that after three years from the date of the policy it should be incontestable for any cause, except for violation of the conditions regarding the occupation of the insured, his becoming a drunkard or having delirium tremens, nonpayment of premium or of notes given for the same, or interest thereon, and misstatements as to age."

It will be observed that the policy was more favorable to the company than the one in the case at bar.

After stating the findings of the lower court, the opinion proceeds as follows:

"The question is whether the plaintiff was entitled to the relief awarded to him by the judgment; and that question depends entirely upon the scope and effect of the statute."

The opinion quotes the statute with reference to the notice, and then proceeds:

"This notice, according to the findings, was never served upon the plaintiff, although he had furnished the defendant with a copy or duplicate of his assignment. It is claimed by the learned counsel for the defendant that the failure of the plaintiff to pay the note referred to at the time it fell due justified the action of the defendant in declaring the policy forfeited, notwithstanding the provisions of the statute. In other words, the contention is that the statute does not apply to such a case. It is admitted that the policy itself, when issued and delivered, was within the equity and protection of the statute; but it is claimed that it has been taken out of both by the transactions between the parties subsequent to the day when the premium fell due, and these transactions consist entirely of the payment by the plaintiff of the portion of a premium in cash and the execution and delivery of his note for the balance. The defendant had an office in the city of New York, and the note in question was made payable there; and it was stated that it was given for the balance of the premium due on the policy, and that the policy should become null and void on the failure to pay the note at maturity. It was also provided in the instrument that in case it was not paid at maturity the full amount of premiums should be considered earned as premiums during its currency, and the note payable, without reviving the policy or any of its provisions. The defendant's contention is so manifestly unjust that no court would be inclined to yield to it, except under pressure of argument that is unanswerable, or in obedience to clearly settled law. It does not appear to me that this court is embarrassed with any such obstacles in this case. That the policy is within the equity and protection of the statute is not and cannot be denied. The parties, by their contract, contemplated that notes might be given for premiums, since they have stipulated that in case of failure to pay such notes when due the policy should become void. The consequence of a failure to pay a note given for the premium, when due, is the same as the failure to pay anything. In either case, the policy is to be forfeited. It is admitted that if the plaintiff had paid nothing when the premium became due, and had thus made a total default, the statute would protect the policy from forfeiture, since the notice was not served. * * * It is often said that the law abhors forfeitures. It is perfectly safe to say that neither law nor equity favors them, and a remedial statute, intended to save contracts of life insurance from

forfeiture, should not be construed by the courts with all that narrow rigor that is sometimes applied to the construction of penal statutes. It should receive, at least, a fair construction; and it is plain enough that we cannot do that and at the same time assent to the contention of the learned counsel for the defendant in this case. The only default on the part of the plaintiff was a failure to pay a part of the premium on the due day; and, as the defendant had never served the statutory notice, it was not in a position to work a forfeiture of the policy. But whether the default was a failure to pay the premium as such, or a note given for the same, is, in our view, of very little consequence, since a default in either respect was a cause of forfeiture under the conditions of the policy. The statute which relieves from a forfeiture in cases where the notice prescribed therein has not been given was, in legal effect, a part of the contract. All contracts are made subject to any law prescribing their effect, or the conditions to be observed in their performance; and hence the statute is as much a part of the contract in question as if it had been actually written into it, or made a part of the stipulations. The failure of the plaintiff to pay the note in question was a cause of forfeiture under the terms of the policy, and therefore was within the scope of the statute which was intended to prevent that result, unless certain conditions were observed."

It has been decided by other cases in New York that the provisions of the statute prohibiting forfeiture without notice should be strictly construed in favor of the insured. See *Phelan v. N. W. Mut. L. Ins. Co.,* 113 N. Y. 147, 20 N. E. 827, 10 Am. St. Rep. 441; *Carter v. Brooklyn Life Ins. Co.,* 110 N. Y. 15, 17 N. E. 396; *Baxter v. Brooklyn Life Ins. Co.,* 119 N. Y. 450, 23 N. E. 1048, 7 L. R. A. 293.

Defendant contends that the New York law is not applicable, because it is waived, both in the policy and in the loan agreement. It relies upon the case of *Mutual Life Ins. Co. v. Hill,* 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788, to support this contention, and if the principle of that case is in point here it must be followed; for this suit was pending at the time of the admission of the state of Oklahoma into the Union, and the decisions of the Supreme Court of the United States are controlling as to such cases. But that decision only goes to the extent of

holding that, where persons have agreed that a contract shall be construed according to the laws of a state other than that in which the contract was made, they may, by the same agreement, waive certain provisions of such law; in other words, that the law of such other state only binds the parties so far as they have agreed to be bound by it. And it was held in that case that where, in an insurance policy, it was stipulated that notice was given and accepted as to each premium, and further notice was waived, this provision, being special, controlled the general agreement that the insurance contract would be construed according to the New York law. That decision does not settle the question now to be decided. In that case, there was an express waiver of notice. No such provision is contained in the application or policy in the case at bar; and the difference in the facts makes that case inapplicable here, though undoubtedly correct upon the facts before the court in that case. The case does not hold that an agreement to construe a contract by the laws of another state is not binding; and it is held in a number of cases that such an agreement will be enforced. See *Coghlan v. So. Car. R. Co.*, 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951, and authorities there cited; *Washington Central Bank v. Hume*, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370; *Mutual Life Ins. Co. v. Dingley*, 100 Fed. 408, 40 C. C. A. 459, 49 L. R. A. 132; *Equitable Life Assurance Society v. Nixon*, 81 Fed. 796, 26 C. C. A. 620, and cases cited; *Williams v. Life Ass'n*, 145 N. C. 128, 58 S. E. 802, 13 Ann. Cas. 51; *Germania Life Ins. Co. v. Pcetz* (Tex.) 47 S. W. 687; *Mullen v. Mutual Life Ins. Co.*, 89 Tex. 259, 34 S. W. 605. See, also, *Seely v. Manhattan Life Ins. Co.*, 72 N. H. 49, 55 Atl. 425.

The second paragraph of the syllabus in the case of *Griesemer v. Mutual Life Ins. Co.* [10 Wash. 202] 38 Pac. 1031, is as follows:

"A life insurance policy issued in Pennsylvania which contains a stipulation that it 'is a contract made and to be executed in the state of New York, and shall be construed only according to the laws' of that state, will be construed as though actually executed and delivered in New York."

And section 92 of the New York law was held to govern such a policy, and to require notice to be given, as provided by that section, before the policy could be forfeited. See, also, *Nielson v. Provident Savings Ass'n Soc.*, 139 Cal. 332, 73 Pac. 168, 96 Am. St. Rep. 146, the reasoning of which applies to the facts of the present case.

From the authorities cited, as well as from principle, it must be concluded that the contract, as originally made, was governed by the New York law; and that, in order to forfeit or lapse the policy, a notice must be given, notwithstanding the provisions that the policy should be void if the premiums were not paid when due. The contract was governed by the same law it would have been, had all parties lived in New York, and all the transactions taken place there.

Was the provision of the New York law with reference to notice changed by the loan contract? The fourth paragraph of the loan agreement provided that in the event of default for one month in the payment of interest on the loan or premium the company, at its option, could cancel the policy. But no procedure for canceling is provided for. The provision is not repugnant to the requirement of the New York law with reference to the notice before canceling the policy. The fourth paragraph does not show, even standing alone, that the company had the right to cancel the contract in any different way to what it had originally. But it must be read in connection with other provisions of the contract. Section 6 of the loan contract provided that "any notice under this agreement may be given either personally or by mailing it at the post office," etc. What notice? No notice is mentioned in the loan agreement. The loan agreement is specific as to when interest is due, and all the details are provided for. The notice must relate to something outside of the loan agreement, and it is a fair inference that it was the notice provided by the New York law that was referred to. Then section 7 provided that the conditions, limitations, and requirements of the policy should remain in full force, except as *expressly* modified in the loan agreement. Was there an express

modification of the limitation upon the policy that it should be construed according to the New York law? None appears. The most that can be claimed is that the fourth paragraph modifies that law by implication. It must be remembered, also, that the policy provided for the making of loans and the payment of interest thereon, and section 92 of the New York law provides for notice of forfeiture before the policy can be forfeited or lapsed by reason of nonpayment, when due, of any premiums, interest, or installment, or any portion thereof, required by the terms of the policy to be paid.

Certainly, if the contract is to be construed by the New York law, notice must have been given. The loan contract does not expressly modify the New York law, and, unless it does, the necessity for notice is not obviated. Under the New York law, in the state of New York, the notice would have been required to cancel the contract, even though expressly waived by the loan contract. And, unless expressly waived, a notice was required in this case. As already seen, there was no express waiver. There is no reason why a note given for a loan should obviate the necessity for notice any more than a note given for a premium.

Defendant contends, further, that the notice was not necessary, because the New York law only applies to forfeitable policies, and that the policy in this case was a nonforfeitable one. If it was nonforfeitable, then it remained in force for the length of time that the accumulation reserve would pay the premium; and no action of any sort by any one was necessary. The policy provided it should be automatically extended. But it is claimed that, by reason of the loan, it became forfeitable, at the option of the company, without notice. This would be to make, by means of the loan, a policy, which in its inception was nonforfeitable, more easily forfeitable than one which was originally forfeitable. This is not right. The most that the loan could do would be to make the policy forfeitable; and when it became forfeitable, the New York law not having been expressly waived, it could be forfeited only by following the method provided by that law. And the burden was on the defendant to show that

it had given the required notice. *Auspitz v. Equitable Life Assur. Society,* 62 Misc. Rep. 469, 115 N. Y. Supp. 109; *Seely v. Manhattan Life Ins. Co.,* 72 N. H. 49, 55 Atl. 425; *Fischer v. Metropolitan Life Ins. Co.,* 167 N. Y. 178, 60 N. E. 431.

It is contended by the defendant that there is no evidence in the record to show there was any reserve on the policy after deducting the loan; but the fact that the company gave the insured a check for $46.25 is sufficient evidence of that fact to convince the ordinary individual there was reserve value in excess of the loan, and certainly enough evidence to require that question to be submitted to a jury.

It is also contended that, by section 88 of the New York law, plaintiff must have made demand for extended insurance within six months after the policy was lapsed or forfeited, and that it had been lapsed for more than that length of time before the payment of the $46.25 to Jones. But the trouble with this argument is that the policy was never lapsed or forfeited, because no notice was given, as required by section 92 of the New York law.

Section 88 of the New York law is as follows:

"Surrender Value of Lapsed or Forfeited Policies. Whenever any policy of life insurance issued after January first, eighteen hundred and eighty, by any domestic life insurance corporation after being in force three full years, shall, by its terms, lapse or become forfeited for the nonpayment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, the reserve on such policy computed according to the American experience table of mortality at the rate of four and one-half per cent. per annum shall, on demand made, with surrender of the policy within six months after such lapse or forfeiture, be taken as a single premium of life insurance at the published rates of the corporation at the time the policy was issued, and shall be applied, as shall have been agreed in the application or policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse or forfeiture, or to purchase upon the same life at the same age paid-up insurance payable at the same time and under

the same conditions, except as to payments of premiums, as the original policy. If no such agreement be expressed in the application or policy, such single premium may be applied in either of the modes above specified at the option of the owner of the policy, notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy. The reserve hereinbefore specified shall include dividend additions calculated at the date of the failure to make any of the payments above described according to the American experience table of mortality with interest at the rate of four and one-half per cent. per annum after deducting any indebtedness of the insured on account of any annual or semi-annual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing. The net value of the insurance given for such single premium under this section, computed by the standard of this state, shall in no case be less than two-thirds of the entire reserve computed according to the rule prescribed in this section after deducting the indebtedness as specified, but such insurance shall not participate in the profits of the corporation. If the reserve upon any endowment policy applied according to the provisions of this section as a single premium of temporary insurance be more than sufficient to continue the insurance to the end of the endowment term named in the policy, and if the insured survive that term, the excess shall be paid in cash at the end of such term, on the conditions on which the original policy was issued. This section shall not apply to any case where the provisions of the section are specifically waived in the application and notice of such waiver is written or printed in red ink on the margin of the face of the policy when issued."

It will be observed from the paragraph of section 88 providing the manner of computing the reserve that from the dividend additions, with interest thereon at four and one-half per cent., should be deducted indebtedness of the insured on account of premium due and *any loan made in cash on such policy.* The amount arrived at in this way was the single premium which should extend the policy. Here is a clear implication that in New York, even under a loan contract, the insured would have six months within which to demand paid-up insurance. The defendant did not attempt to forfeit the policy until the 11th of October, 1904, less than 30 days before the death of the insured,

and he would have had the right to demand extended insurance any time within six months after the 11th of October, 1904, even if that forfeiture had been regular. But, as it was no forfeiture at all, of course, the provisions of section 88 do not apply.

The defendant further contends that the $46.25 must be returned before the suit can be maintained. In the case of *St. Louis & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, the second paragraph of the syllabus is as follows:

"When, in an action at law, the tender of performance of an act is necessary to the establishment of any right against another party, such tender or offer to perform is waived, or becomes unnecessary, when it is reasonably certain that the offer will be refused."

That case gives the reason for and cites the authorities supporting the doctrine announced, and it is not necessary to enlarge upon the question. It is sufficient to say that it clearly appears from the record in this case that any tender would have been refused; and the law does not require idle ceremonies as conditions precedent to bringing a suit. See *Nielson v. Provident Savings L. Ass'n Soc.,* 139 Cal. 332, 73 Pac. 168, 96 Am. St. Rep 146.

It follows from what has been said that in this case the defendant could not lapse or cancel the policy without giving the notice required by the New York law, unless by agreement with the insured. If the insured agreed to the cancellation of the policy, the agreement was binding under the facts proved here. The evidence showed that from the 4th of September previous to his death the insured was confined to his bed with the illness which caused his death. On the 18th of September, his condition became such that his stomach refused food, and the physicians in charge commenced rectal feeding, and continued that method of feeding until October 7th, at which time the rectum refused to absorb, and from that time until his death he had no nourishment. His emaciation was extreme, and from the 13th of October to the time of his death he was in a semi-

comatose condition.   Without setting out the evidence more fully, it is sufficient to say that it was such as to require the issue to be submitted to the jury whether or not he was capable of agreeing to the cancellation of the policy.

The plaintiff has cited several decisions of the Supreme Court of Kentucky upon practically the same facts as exist in this case, in all of which it is held that the company cannot forfeit a policy for nonpayment of interest on a loan.  *New York Life Ins. Co. v. Curry,* 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. St. Rep. 297; *New York L. Ins. Co. v. Evans,* 136 Ky. 391, 124 S. W. 376.  These decisions are criticised in the defendant's brief as having no foundation in reason or authority outside of that state.   These decisions are not based upon the New York statute, but upon the principle of equity that, wherever a penalty is inserted merely to secure the performance of a collateral agreement, equity will relieve against the penalty.   *St. Louis Mutual L. Ins. Co. v. Grigsby,* 10 Bush (Ky.) 310; *Montgomery v. Phoenix Mutual L. Ins. Co.,* 14 Bush (Ky.) 51; *N. W. Mutual L. Ins. Co. v. Fort,* 82 Ky. 269; *Mutual L. Ins. Co. v. Jarboe,* 102 Ky. 80, 42 S. W. 1097, 39 L. R. A. 504, 80 Am. St. Rep. 343; *Manhattan L. Ins. Co. v. Patterson,* 109 Ky. 624, 60 S. W. 383, 53 L. R. A. 378, 95 Am. St. Rep. 393.   No cases in point holding otherwise are cited by defendant, and the Kentucky cases are cited with approval in *Eddy v. Phoenix L. Ins. Co.,* 65 N. H. 27, 18 Atl. 89, 23 Am. St. Rep. 17; but it is believed safer, without at this time approving or disapproving the Kentucky decisions, to rest this decision upon the construction of the New York law.

The case should be reversed and remanded for further proceedings, not inconsistent with this opinion.

By the Court:   It is so ordered.