No. 3096

Second Circuit

---

## JASPER v. THE MUTUAL LIFE INS. CO. OF NEW YORK

---

(March 12, 1929. Opinion and Decree.)

---

Herndon and Herndon, of Shreveport, attorneys for plaintiff, appellee.

Blanchard, Goldstein and Walker, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE.

REYNOLDS, J. The plaintiff, Mary Jasper, as the nominated beneficiary in a policy of insurance for $3,000.00 issued by the defendant, The Mutual Life Insurance Company of New York, on the life of George F. Jasper, deceased, sought by this action to recover judgment against the defendant for the difference between the face value of the policy and the amount of a loan of $1,275.00 made by the defendant to the insured solely on the security of a pledge of the policy, and for the sum of $55.88 as the unearned part of $76.50, interest on the loan in advance for one year, alleged to have been paid by the insured.

The defense is that the interest on the loan was payable in advance and was not paid at its maturity and that for that reason the policy was forfeited and cancelled pursuant to the terms of the loan pledge, and that all that was owing to plaintiff under the policy was $342.46, being the difference between the amount of the loan, $1,275.00, and the surrender value of the policy, which it alleged was $1,617.46, and that defendant had duly tendered this sum to the plaintiff and she had refused to accept it.

On these issues the case was tried and there was judgment in favor of the plaintiff and against the defendant, and defendant appealed.

## OPINION.

The policy, which is of the kind known as 20-payment, is dated January 26, 1889, and was paid up at the time of the loan. It provides, among other things:

"This policy may be surrendered to the company at the end of the said twenty years from the date of issue, and the full reserve (computed by the American Table of Mortality and four per cent. interest), and the surplus, as defined above, will be paid therefor in cash. If surrendered at the end of any subsequent quintennial dividend period, the full reserve by the same standard and the surplus as defined will be paid in cash. No cash value will be paid for a surrender at any other times or dates."

It was proved by defendant and not controverted by plaintiff that at the date of the forfeiture the surrender value of the policy was $1,617.46.

The contract of loan and pledge reads as follows:

"$1,275.00       New York, ____ ___ 191 .

"On January 26th, 1916, without grace, we promise to pay to the order of THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK one thousand two hundred seventy five dollars, with interest at the rate of 6 per cent. per annum at the office of said Company in the City of N w York, for value received, having de-

posited with and assigned to said Company Policy No. 348766 as collateral security for the payment of this note, as herein provided. The application of the foregoing amount is hereby approved as follows:

Amount of loan ................................ $1,275.00
Adjustment for interest on premiums ................................ $ _____

$ _____

To pay loan No. 266578 due 1/26/1915 on Policy No. 348766 ................................ $ _____ 1,275.00
Accrued interest on Loan No. _____ 191 _____ $ _____
To pay premiums on said policy to Paid-up 191 ____ ____ $ _____
Adjustment for interest on premiums _____ $ _____
Balance by Company's check _____ $1,275.00

"The borrower may pay this note, with accrued interest at any time prior to the date when due, and when so paid together with all other indebtedness in respect of said policy this loan note will be automatically cancelled, and the Company will return the policy.

"The time for the payment of this loan may, from time to time, upon request of any of the parties hereto and with or without notice to the other parties, be extended for a period of six months or one year, upon payment of any premiums on the policy necessary to cover the period of any such extension and payment of interest which shall have accrued at the maturity of the loan.

"In the event of failure to repay said note on the date when due as herein provided or in the event of the non-payment of the interest accrued thereon, the Company, without further notice and without further demand for payment, may cancel said policy as of the date of default, and apply to the payment of said note (with accrued interest), the sum of $1,435.00 (being the customary cash surrender consideration allowed by the Company as the surrender value of policy issued upon like terms and conditions) and pay the remainder of said sum (if any), on demand, to the parties entitled thereto.

"In case of any extension or renewal or extensions or renewals of this note, the foregoing provision for cancellation and surrender of the said policy shall be applicable, but in such case, in lieu of the above stipulated cash surrender consideration, the Company will pay, as a cash surrender value at the maturity of any such extension or renewal, subject to the deduction of the existing loan with accrued interest, the customary cash surrender consideration then allowed by the Company, on other policies issued and terminated upon like terms and conditions as this policy, which amount shall not be less than the above stipulated cash value.

"In the event of the death of the insured before the maturity or payment of the note, and while said policy is in force, the amount of said note, with accrued interest, will be deducted from the amount payable on the policy, the balance being payable to the person or persons entitled thereto. In witness whereof we have hereunto set our hand the 25th day of January, nineteen hundred and fifteen.

"GEORGE F. JASPER,
"Insured.
"MARY JASPER,
"1102 East College St.,
"Shreveport, La."
"Witness J. P. Dupree,
"Oil City, La.
"Address.
"Witness G. A. Humason,
"132 Hamilton St.
"Shreveport, La.
"Address."

The time for the payment of the loan was extended from time to time by payment of interest thereon until January 26, 1919, on which date there was owing and due on the note the principal, $1,275.00, and if it was the desire or intention of the insured to extend the maturity of the debt, then an additional sum of $76.50 as interest on the loan for one year from that date. Neither the principal of the note nor interest for another year to extend its maturity for that time was paid.

Under the business rules of the defendant, thirty days' grace were allowed for such payment and, on February 24, 1919,

the manager of defendant's policy loan department at St. Louis, Mo., addressed a letter to the insured at Shreveport, La., saying:

"The thirty days' grace for payment under policy No. 348,766 expires Wednesday. Kindly get in touch with the writer immediately."

However, the interest was not paid within the thirty days, and defendant cancelled the policy as of the date of the maturity of the loan, January 26, 1919.

The manager of defendant's St. Louis, Mo., office wrote the insured under date of March 4, 1919, as follows:

"We refer to your letter of recent date regarding your policy No. 348,766. Our letter of the 24th ult. referred to the overdue interest of $76.50 which should have been paid on or before Feb. 26th. As this interest is unpaid, and the days of grace allowed to expire, we have written to our New Orleans agency giving them the facts and no doubt you will hear from them within the next few days. The policy is now lapsed, and steps for its restoration should be taken. The steps necessary to take, in order to reinstate this policy, will be explained by our New Orleans office."

Under date of March 5, 1919, Miss Mary A. Jasper, the daughter of the insured, addressed a letter to the manager of defendant's New Orleans office, reading:

"Several days ago I had notice from your company of interest due for the amount of $76.50 and that time in which to pay same had lapsed. A reply to a letter of inquiry to Mr. Shaw, your St. Louis manager, advised me that the necessary action for the reinstatement of this policy would be explained to me in a letter from the New Orleans office. Upon receipt of same, I talked with Mr. Deas, the Shreveport representative who suggested that a check covering the amount of the interest would straighten the mat-

ter out and restore the policy to its valid form. I herewith hand you check for the amount of the interest $76.50, and trust you will let me hear from you upon receipt of same. The reasons for the delay in sending you the above mentioned check is the illness of Mr. Jasepr, and your last notice served to bring it to our immediate attention."

Under date of March 14, 1919, the insured wrote the manager of defendant's New Orleans office to this effect:

"On March 5th I wrote you a letter in regard to lapsed policy of George F. Jasper, No. 348,766, and enclosed a check for $76.50, the amount of the premium due under the same. Up to this date I have had no reply or acknowledgment of same. Please let me hear from you by return mail and oblige."

Defendant's New Orleans office wrote the insured that such matters were outside of its authority and had been referred to defendant's home office at New York; and defendant's St. Louis office wrote him under date of March 13, 1919, that:

"We received from our New Orleans agency your check for $76.50, which you tendered for interest on loan under policy No. 348,766. As this policy became lapsed for the non-payment of interest within the days of grace allowed, we are submitting all the facts in your case to our Home Office. No doubt you will hear from them in the next few days."

On March 24, 1919, defendant's St. Louis office wrote the insured:

"We are enclosing herewith personal health certificate which be kind enough to fill out, sign, have your signature witnessed and return to this office at once. This certificate is sent you with the hope that if it is satisfactory to the company, they will accept payment of interest on the loan made under your policy No. 348,766. This policy has been in default for the non-payment of interest within the grace period, but we are confident that

if you will send the enclosed form to us, properly completed, the company will consider reinstating the insurance."

On March 31, 1919, the insured's daughter wrote defendant's St. Louis office saying:

"In re: Policy No. 348,766 G. F. Jasper. I beg to acknowledge receipt of your letter of recent date, and will state that the reason of the delay in remitting you interest to cover the loan made on above numbered policy, was that I was in Washington, D. C., engaged in war work, and only received notice of the expiration of the grace period contained in your letter of Feb. 24, 1919, on my return home, and I at once remitted you check to cover. My father doubtless thought that this matter had been attended to, and would indeed be very much vexed if he learned the present condition, and, under the circumstances, as the check was remitted only a few days after the grace period, I sincerely hope that you will accept same at this time and reinstate the policy."

Nothing was done by the insured toward obtaining and sending to the defendant the health certificate requested as a condition precedent to reinstating the policy, for the reason, doubtless, that the insured was then seriously ill.

The insured died on May 2, 1919.

On May 6, 1919, the insured's daughter wrote defendant's St. Louis office requesting that proper blanks be sent her on which to make proof of claim for death-loss under the policy.

And, under date of May 27, 1919, she again wrote the St. Louis office as follows:

"No. 348,766—G. F. Jasper. Under date of May 6th, we wrote you regarding the proper blanks to be filled out in the case of the above numbered policy, and received your reply of the 8th saying that you were writing to the home office for some information regarding same. However, since that time, we have heard nothing from you, and will kindly ask that you favor us with an early reply and forward the necessary blanks."

Under date of May 31, 1919, defendant wrote Mrs. Mary A. Jasper, widow of the insured and beneficiary under the policy and plaintiff in this action, as follows:

"In regard to your letter of May 27th, we beg to advise that the above policy stands surrendered for non-payment of the loan due Jan. 26th, 1919; and company's check for $265.96 is enclosed herewith in accordance with the statement attached hereto."

To this letter she replied, under date of June 4, 1919, as follows:

"Policy No. 348,766—G. F. Jasper. Your letter of May 31st, with check and statement, received, and I herein return the check and statement, as I am undoubtedly entitled to the full amount of the policy, less the amount of the loan of $1275.00, for the following reasons. Mr. Jasper enclosed check for $76.50, amount of interest due, to your New Orleans office on March 13th, the receipt of which you acknowledged on March 13th, and stated that you were submitting all the facts to the Home Office. You next wrote to him March 24th stating: 'that if personal health certificate was satisfactory to the company they will accept payment of interest on the loan.' Mr. Jasper was ill at the time and did not fill in the certificate; but, regardless of that fact, you cashed his check for the interest on March 25th, and on receipt of cancelled check for interest I believed, and do believe at this time, that you, by accepting the interest, waived the health certificate, and I am entitled to recover the face value of the policy, less the loan."

On June 10, 1919, defendant wrote plaintiff:

"When forwarding surrender check to you under the above policy, we neglected to include the amount held here of $76.50. Same is now enclosed by our check."

On June 16, 1919, plaintiff wrote defendant, returning to it the check for $76.50 and saying that she would not accept it, saying that defendant did not owe it and that she was not entitled to it because .defendant had accepted it in payment of the interest due on the loan and renewing her demand on defendant for payment of the difference between the face of the policy and the amount of the loan.

Under date of June 26, 1919, defendant's attorney in New York City wrote to plaintiff and returned to her the checks for $265.96 and $76.50, saying that the defendant had held the $76.50 awaiting receipt of the certificate of health and that the certificate had never been furnished it and that therefore the policy had never been reinstated, and that all that was owing by defendant to plaintiff was the $265.96, being the difference between the amount of the loan and the cash surrender value of the policy.

On July 9, 1919, plaintiff again returned to defendant the two checks and reiterated her position and demand.

On July 18, 1919, defendant acknowledged the return of the checks and informed plaintiff that it would hold them subject to her orders.

Plaintiff contends that the provision of the pledge contract authorizing cancellation of the policy was null and void and that the policy was still in force and effect notwithstanding the alleged cancellation.

That if there was authority to cancel the policy the right to cancel was waived by defendant's retention of the interest received after default.

## I.

Plaintiff's first contention apparently is *res novo* in the jurisprudence of Louisiana.

Counsel have not cited us to any case in point and we have not been able to find any ourselves.

The question was adverted to in Lesseps vs. Fidelity Mut. Life Ins. Co., 120 La. 610, 45 So. 522, which was a suit upon a life insurance policy. The defense was that the policy had been forfeited for non-payment of a note given for premium on the policy and containing the following clause:

"This note is given for premium on policy No. 112,016 for forty thousand dollars, issued by the Fidelity Mutual Life Insurance Company, and, if not paid at maturity, it is expressly agreed that the above numbered policy shall be *ipso facto* null and void without notice to the maker hereof, and without any act on the part of the company and shall remain so until reinstated as provided by its terms."

The note not having been paid at its maturity and the insurer having refused to pay on the ground that the policy was forfeited by the non-payment, the plaintiff urged that time was not of the essence in contracts to repay borrowed money, and considering this the court said:

"Passing from a consideration of the issues of fact to the law, learned counsel for plaintiff quotes from Manhattan Life Ins. Co. vs. Wright, 126 Fed. 82, 61 C. C. A. 138, in which it was said, in effect, that time is not of the essence of a contract to *repay borrowed money* and an agreement to forfeit is of no effect where the lost money thereby is much in excess of interest during delay. There is a great difference as relates to the facts in the cited case and the case here. In the former, the question involved a loan, and not premiums which the insured had paid. The insured, having failed to make payment of the note at maturity, was sued as a debtor of the loan secured by the policy as a collateral security. *Time, of course, was not of the essence.* It is different in matter of a premium on a policy. In regard to premiums, the decisions hold that time is of the

essence. The decision to which we are referring at present, cited by plaintiff's counsel, expressly sustains that view. "*The rules of law applying to a loan do not apply to premiums as relates to time.*" (Italics ours.)

In the Manhattan Life Ins. Co. vs. Wright, case, supra, the court, quoting from Pomeroy's Equity Jurisprudence, second edition, sections 449, 450, said:

"Time is not ordinarily of the essence of a contract to repay borrowed money, and an agreement to forfeit or to lose money or property much in excess of interest during the delay on account of failure to pay a loan on the stipulated day is a contract for a penalty for failure to pay money, and is void, because compensation is the basic rule for the measure of damages and interest during the delay is, under the law, full compensation therefor."

We infer from the language of the court quoted from Lesseps vs. Fidelity Mutual Life Insurance Company, supra, that had the note there involved represented money borrowed instead of premium on the policy sued on the contention of the plaintiff there would have been sustained.

New York Life Ins. Co. vs. Curry & Bros., 115 Ky. 100, 72 S. W. 736, 61 L. R. A. 268, 103 Am. Rep. 297, was a suit to compel reinstatement of a paid-up policy of life insurance that had been forfeited for nonpayment of the principal or interest of a continuing loan made by the insurer to the insured on the security of a pledge of the policy. The pledge contract stipulated that:

"It is agreed that in the event of the default of any payment of said interest or of said loan * * * for thirty days after they shall respectively become due said policy shall be deemed to be and shall be in effect at the option of said party of the first part (the insurer), surrendered to said party of the first part at the customary cash surrender value then allowed by said party of the first part for the surrender of policies of this class, said party of the first part in that case being liable to said party of the second part (the insured) for the return of the balance only of said cash surrender value after deducting said loan and interest and any expenses incurred thereon."

At the time of the forfeiture the hypothecated policy had a cash surrender value of $12.47 in excess of the amount of principal and interest owing on the loan.

More than eight months after the forfeiture an assignee of the policy (the insured being still alive) offered to pay to the insurer the interest owing on the loan and demanded that the policy be reinstated but the insurer refused the tender and to reinstate the policy and thereupon the assignee brought suit against it to compel it to reinstate the policy.

The trial court ordered the policy reinstated, and the Court of Appeals, in affirming the judgment, inter alia, said:

"This appeal involves the validity of the clause of the above agreement providing for the surrender, or practically for the forfeiture, of the policy, if the interest on the loan was not promptly paid when due. By the terms of this writing, if the loan, or its interest, was not repaid when due under the loan agreement, the policy was to be 'surrendered' to the insurer 'at the customary cash surrender value then allowed by said party for the surrender of policies of this class.' That is, pure and simple, a provision for the forfeiture of the policy upon such terms as the payee of the note may require, and at its option. The difference between this and the ordinary unqualified forfeiture lies alone in the extent of the forfeiture. It operates as an enforced conversion without further notice to, or consent of, the borrower, of his collateral, if he fails to promptly pay the interest upon his debt.

"The contract of insurance between appellant (the insurer) and Anderson (the

insured) had been fully executed so far as Anderson was concerned. He had paid all that he was required to pay to be entitled to receive from appellant the full sum stipulated to be paid—$630—at his death. The $130 was borrowed from appellant since that completion of the contract. The courts have uniformly held in favor of the insurer that agreements for the forfeiture of the policy when premiums were not paid when due are valid, and their enforcement upheld. This is said to be because 'on the prompt· payment of the premiums depends the mutuality of the contract and the ability of the insurance company to meet its obligations.' But both the reason and the rule are restricted to· the matter of premiums alone. Forfeitures are disfavored in law. When they are mere penalties for the non-payment of money borrowed, they are not allowed. They lead to, and themselves are, unconscionable oppressions of the unfortunate. * * * In the case at bar there is no perceivable reason why the insurance company lending the money is, or can be, in a different position from any other lender of the money had the policy been assigned to the latter as collateral, and a default in payment of the interest had occurred. * * * We are of the opinion that the provision in the loan agreement for a surrender or forfeiture of the policy upon the non-payment of the interest upon the loan is void."

In the case at bar the evidence shows that the cash surrender value of the policy at the maturity of the loan was $1617.46 or $346.42 more than the loan debt, and that this surplus was being annually augmented by dividends. Even had no interest been paid for four years the excess would have protected the defendant that long from loss. Enough of the $346.42 might have been applied to payment of the interest and the transaction treated as an increase of the loan or decrease of the cash surrender value *pro tanto*. Instead, the policy was forfeited for $76.50 interest no part of which had as yet been earned.

## II.

The days of grace expired February 26, 1919, and the insured sent defendant the interest on March 5, 1919—less than ten days thereafter—and defendant did not offer to return the money until May 31, 1919, nearly three months after it had received it, and until the insured was dead nearly a month.

We are of the opinion that there was acquiescence in and waiver of the defendant in prompt payment of the interest.

It is elementary that acceptance of performance after default waives the default.

Defendant argues that the retention of the money was not as owner but as depository, awaiting the furnishing of the certificate of health.

This contention is based upon a misconception of the provision of the loan contract regarding such certificate. The provision refers to forfeiture for non-payment of premium and not to cancellation for non-payment of interest. Obviously a policy forfeited for non-payment of premium should not be reinstated without a showing of good health. There is no need for such showing where, as here, the policy was paid up.

The contract of insurance being complete, defendant's liability to pay and the beneficiary's right to receive the amount agreed to be paid—$3,000—at the death of the insured, was absolute.

The loan contract was independent of the insurance contract and was entered into after the latter became complete; and only on the theory of deliberate purpose to take unconscionable advantage of borrowers is it conceivable that the state of the insured's health was intended to be made a factor in the determination of the

question whether forfeiture for non-payment of interest should be waived.

## III.

Defendant contends that the policy was cancelled at the expiration of the days of grace as of the date of the maturity of the loan.

It does not appear that the acts required by Act No. 68 of 1906 to be performed by the insurer as a condition precedent to valid forfeiture were performed.

That act provides:

"That no life insurance corporation * * * shall within one year after the default in payment of any * * * interest declare forfeited, or lapsed, any policy hereafter issued or renewed, * * * unless a written or printed notice stating the amount of such * * * interest * * * due on such policy, the place where it shall be paid, and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured, * * * at his or her last known postoffice address in this state, postage prepaid by the corporation, * * * at least fifteen and not more than forty-five days prior to the day when the same is payable. The notice shall also state that unless such * * * interest * * * when due, shall be paid to the corporation, * * * by or before the day it falls due, the policy and all payments thereon will become forfeited and void except as to the right to a surrender value, extended insurance or paid up policy * * *."

It was held in Carter vs. Brooklyn Life Ins. Co., 110 N. Y. 15, 17 N. E. 396, that the payment of an annual premium constitutes a renewal.

And in Jones vs. New York Life Insurance Co., 32 Okla. 339, 122 Pac. 702, the Supreme Court of Oklahoma considered a statute of the State of New York identically similar to ours.

In that case the insured borrowed money from the insurer upon a pledge of his policy under a loan contract, so much of it as is material here, reading:

"That in the event of default in payment of said interest or of any premium on said policy, for one month after they shall respectively become due, said party of the first part, which is hereby irrevocably appointed attorney for that purpose, is hereby authorized at its option to cancel said policy and its accumulations, for the customary cash surrender value then allowed by said party of the first part for the surrender of policies of this class, said party of the first part in that case being liable to said party of the second part for the return of the balance only of said cash surrender value, after deducting said loan and accrued interest."

The loan was renewed from time to time, and became due on the 1st of March, 1904. Neither the loan nor the interest was paid. After some negotiations between the company and the insured the company, on the 14th of October, 1914, computed the cash surrender value of the policy, and deducted therefrom the amount due upon the loan, including interest thereon for one month after it became due, and mailed to the insured a check for the difference in the amount due upon the loan and the cash surrender value of the policy.

The insured died on November 4, 1904, and the beneficiary in the policy brought suit on it.

It was contended by the plaintiff that no notice of intention to forfeit the policy was given pursuant to the statute of the State of New York and that therefore the forfeiture was void.

It was claimed by the defendant that the notice required by the statute was waived by the loan agreement, and the court said:

"It is often said that the law abhors forfeitures. It is perfectly safe to say that

neither law nor equity favors them, and a remedial statute, intended to save contracts of life insurance from forfeiture, should not be construed by the courts with all that narrow rigor that is sometimes applied to the construction of . penal statutes. It should receive at least a fair construction; and it is plain enough that we cannot do that and at the same time assent to the contention of the learned counsel for the defendant in this case * * * But whether the default was a failure to pay the premium as such, or a note given for the same, is, in our view, of very little consequence, since a default in either respect was a cause of forfeiture under the conditions of the policy. The statute which relieves from a forfeiture in cases where the notice prescribed therein has not been given, was, in legal effect, a part of the contract. All contracts are made subject to any law prescribing their effect, or the conditions to be observed in their performance; and hence the statute is as much a part of the contract in question as if it had been actually written into it, or made a part of the stipulations. The failure of the plaintiff to pay the note in question was a cause of forfeiture under the terms of the policy, and therefore was within the scope of the statute which was intended to prevent that result, unless certain conditions were observed. It has been decided by other cases in New York that the provisions of the statute prohibiting forfeiture without notice should be strictly construed in favor of the insured. * * *

"Defendant contends that the New York law is not applicable, because it is waived both in the policy and in the loan agreement * * * Certainly, if the contract is to be construed by the New York law, notice must have been given. The loan contract does not expressly modify the New York law, and, unless ·it does, the necessity for notice is not obviated. Under the New York law, ·in the state of New York, the notice would have been required to cancel the contract, even though expressly waived by the loan contract. And, unless expressly waived, a notice was required in this case. As already seen, there was no express waiver. There is no reason why a note given for a loan should obviate the necessity for notice any more than a note given for a premium."

The correspondence between the insured or the beneficiary and defendant shown by the evidence was not a compliance with the statute.

Boring vs. Louisiana State Ins. Co., 154 La. 549, 97 So. 856.

Independently of the statute it would seem that legal forfeiture could only be effected by formal notice promptly sent, together with a formal tender of the difference between the amount of the loan and the cash surrender value of the policy.

There is no evidence of any such formal forfeiture, and not until defendant was informed of the death of the insured did it tender anything on its obligation under the policy, and it only tendered then $265.96 as the cash surrender value of the policy when, according to its own admission, that value was $342.46.

We find no error in the judgment appealed from and accordingly it is affirmed.