**Cora N. Roggenkamp, Executrix of Last Will and Testament of Henry Roggenkamp, Deceased, Appellee, v. Ella Marks, Appellant, and Emmett Pratt, Defendant.**

**Gen. No. 9,352.**

Opinion filed March 7, 1939.

WM. S. SCHRODER and FRANKLIN P. SEARLE, both of Rock Island, and ARTHUR H. SHAY, of Streator, for appellant.

BELL, FARRAR & SCOTT, of Rock Island, and BUSH & BUSH, of Davenport, Iowa, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

This suit was brought under the Injuries Act by Cora N. Roggenkamp, as executrix of the last will and testament of Henry Roggenkamp, deceased, for the death of said Henry Roggenkamp, alleged to have been caused by a collision between the automobile which he was driving and the automobile owned by the defendant, Ella Marks, and driven by the defendant, Emmett Pratt, her agent and servant.

The plaintiff alleges that on August 4, 1936, Rock Island and Moline were both incorporated cities of Illinois, and the city of Rock Island adjoined Moline on the west; that between said cities is what is known as Forty-sixth street, and that the collision occurred on Forty-sixth street, at the intersection of Fourth avenue; that this is a residential portion of both cities; that the plaintiff's testate was driving his car south upon and across the said intersection, with all due care and caution for his own safety, etc.; that the defendant, Marks, through her agent, then and there drove her motor truck west on Fourth avenue in Moline, and over and upon said intersection, and collided with the automobile of the plaintiff's testate. The plaintiff then charges the defendants with doing one or more of the

following acts: (a) Drove at unlawful rate of speed, (b) Failed to yield the right of way at the intersection, (c) Operated their car so negligently while approaching and crossing the intersection, that they ran into the Roggenkamp car, and the plaintiff was injured and damaged. The defendants filed a motion to dismiss the suit, and attached thereto, a copy of a release that they had procured from Henry Roggenkamp, in his lifetime, releasing the defendants from any and all damages through the said collision. This motion was overruled, and the defendants required to answer.

The answer denied any negligent acts on the part of the defendants. They admit the ownership and agency of the automobile in question, and affirmatively plead their release, as set forth in their motion to strike, and attached a copy of the release to their answer. To this answer, the plaintiff filed a reply and averred that at the date of the release, the deceased was of unsound mind, and unable to comprehend the nature of the release. She denied that the decedent had for a good and valuable consideration, or otherwise released or discharged, the defendants from liability. To this reply, the defendants filed their answer, and denied the material averment in the reply, and the case was at issue. After the trial had been in progress for some time, it was discovered that Emmett Pratt was a minor, and was not represented by a guardian or guardian *ad litem*. The court stopped the trial and appointed a guardian *ad litem* to represent him. He filed his motion that the case as to him, be dismissed, and the plaintiff confessed the motion, and Pratt was dismissed from the suit, leaving the appellant, Ella Marks, the sole defendant.

At the close of the evidence, the defendant entered a motion for a directed verdict, urging, that the omission on the part of the plaintiff to return to the defendant, the $50, which had been paid for the release of the

liability of defendant, was fatal to her cause of action. The court overruled this motion, and the case proceeded to trial. The jury found the issues in favor of the plaintiff and assessed her damages at $1,500. The defendant made a motion for judgment notwithstanding the verdict, which was denied by the court. The defendant also made a motion in arrest of judgment, which was also denied, and the court entered judgment on the verdict for $1,500. From this judgment, this appeal is prosecuted.

It is urged by the appellant that the plaintiff's testate was guilty of contributory negligence, which was the proximate cause of his injury, and the verdict should not stand. From a review of the evidence in this case, we are convinced that the verdict of the jury is not against the manifest weight of the evidence, and the judgment should not be reversed for that reason.

It is conceded that Henry Roggenkamp, in his lifetime signed the release introduced in evidence. The defendant claims this is a complete bar to the plaintiff's cause of action. That he received the $50 consideration mentioned in such release, and retained it, is also conceded. The appellant seriously contends that the failure of the plaintiff to return this $50 to the defendant before the close of the trial, is an absolute bar to her cause of action. Before discussing the law relative to this case, it should be noted that the plaintiff does not charge the defendant with any fraud in procuring the release in question. At the trial, Mr. Searle, attorney for the defendant, made an objection to a question as follows: "I wish to make a formal objection. The plaintiff in this case, is not charging that this lease was obtained by fraud." Mr. Bell, one of the attorneys for the appellee replied, "That is all right Mr. Searle, we are not charging fraud."

In the case of *Pawnee Coal Co. v. Royce*, 184 Ill. 402, the plaintiff, Royce, was injured in the defendant's coal mine and signed a release to the company for all

the damage he had sustained. Later, Mr. Royce started suit against the company, alleging the injuries, etc., and the defendant plead the release. Mr. Royce did not return the money and the goods he had received in payment for the release, but procured a judgment against the coal company for damages, far in excess of the amount paid for the release. The court, in passing upon this question, used this language: "It is a familiar and well established principle of law that where a person attempts to avoid a contract or instrument on the ground of fraud or misrepresentation he must return or restore all he has received under it, or offer to do so, or no action can be maintained by him. (*Ellington v. King,* 49 Ill. 449; *Bowen v. Schuler,* 41 id. 192; *Wheeler v. Mather,* 56 id. 241; *Wolf v. Dietzsch,* 75 id. 205.) And while the plaintiff might not be compelled to rescind before suit brought, under certain circumstances, as, for instance, where he does not know of the existence or nature of the contract, the law is that the rescission and offer to restore must be at the earliest practicable moment whenever that may be. (*Hall v. Fullerton,* 69 Ill. 448; *McCarty v. Marlette,* 80 id. 526.) The release in question, if fairly entered into, would have constituted a complete bar to the cause of action. (*Kingsley v. Kingsley,* 20 Ill. 203; *Illinois Central Railroad Co. v. Welch,* 52 id. 183.) If, however, a release is procured by the perpetration of an active or positive fraud upon the plaintiff by the defendant or its officers, there may be circumstances under which the plaintiff will not be required to return or offer to return the consideration received for the pretended release, but he may bring his suit without doing so."

The court then reviewed many cases where it was decided that it was not necessary to tender back money received for the release, but concludes with a statement that these cases all show that the defendants were guilty of some fraudulent act in procuring the releases,

and that it obviated the necessity of returning the money paid in settlement for the release, and further if the release is a fraud on the party procuring the release, it must be an actual, intended fraud. Other cases, both in our Supreme Court and Appellate Court have held thê same. (*Huiller v. Ryan,* 306 Ill. 88; *Fussell v. Hail;* 134 Ill. App. 620.)

After the appellant had entered its motion for a directed verdict for failure of the plaintiff to return the consideration for the release, the attorney for the plaintiff tendered $50 to the attorneys for the defendant, as a return of the money which had been given for the release. The defendant refused to accept the money, and claimed that it came too late and insisted that the plaintiff should have tendered the money as soon as she learned of the release.

The place, where the accident in question occurred, was misstated in the copy of the release attached to defendant's answer, but it gave notice to the plaintiff and her attorneys, that Mr. Roggenkamp, in his lifetime, gave such release. In her reply to the defendant's answer which set forth said release, she did not allege this as a defense of the same, but ''that at the time the release was procured, Mr. Roggenkamp, was not competent to make the same.'' When this error in the copy was discovered, it was corrected, and it appears from the record, that some time elapsed between the correction and the tender of the $50 made in open court.

This court in the case of *Worthey v. Cleveland, C., C. & St. L. Ry. Co.,* 251 Ill. App. 585, quoted with approval from *Pawnee Coal Co. v. Royce, supra,* and concluded that it was necessary that a party to a contract desiring to rescind it for fraud must make his election and to do so promptly after learning of the fraud. (*Greenwood v. Fenn,* 136 Ill. 146; *Hansen v. Gavin,* 280 Ill. 354.) A party should not be permitted to specu-

late with reference to the possible outcome of his suit for damages. (*Paulen v. Springfield Consolidated Ry. Co.,* 166 Ill. App. 382–384.)

It seems to us that the law is well established that it was incumbent upon the plaintiff in this suit to tender to the defendant the consideration paid for the release at the earliest possible time after they had learned of the release.

The next question to be considered is, Did the plaintiff by waiting until the evidence was closed at the time of the trial, and after the defendant entered her motion for a directed verdict, bar recovery in this case? The only case that has been called to our attention, and that we have been able to find, which bears directly upon this question, is *Brown v. Walker Lumber Co.,* 128 S. C. 161, 122 S. E. 670.

The facts in the *Brown* case are very similar to the case we are now considering. Mr. Brown had been injured by the lumber company's truck. An insurance agent representing the lumber company had procured a release for $75 from Brown for all damages he had sustained. Brown started suit for damages against the lumber company. The defendant set up the release by the way of an answer, and claimed it to be a bar to the plaintiff's cause of action. The plaintiff replied that the $75 had not been paid by the defendant, but by an insurance company, and also that the release had been procured by fraud. There was no attempt made to return the $75 until after the evidence had been concluded, and the defendants made a motion for a directed verdict, because the plaintiff had not tendered to the defendant, the consideration paid for the release. The court, in discussing the case, had this to say: "At the trial, after defendant had moved for a directed verdict, plaintiff's counsel made the following offer: 'Mr. Graydon (attorney for plaintiff), I take the position—I will state that if the company wants to make

demand of Brown for the return of this money we stand ready to tender it to them; but the Walker Lumber Company could not receive it under the undisputed testimony.'

"(7) We are clearly of the opinion that in no view of the case was this a sufficient tender or offer. In the first place, plaintiff's proposal was merely a conditional offer that if 'the company' (whether the insurance company or the lumber company does not appear) wanted to make demand for return of the money a tender would be made, coupled with the contention that the defendant had no right to receive it. The defendant had made no demand for the return of the money, but on the contrary was insisting that the plaintiff keep the money and abide by his contract. There was, it would seem clear, no such unconditional, definite offer to return the money as would entitle the plaintiff to treat the contract of release as rescinded. In the second place, if the offer had been sufficient, it came too late. Up to the time of the motion for direction of the verdict the plaintiff was insisting upon retaining the benefits which he had received under the contract releasing the defendant from liability, and, at the same time, insisting upon escaping the obligations imposed by the contract on the theory that the money had not been paid by the defendant but by a third party. He took the risk of that theory proving, as it was, untenable. At the conclusion of the evidence, the condition precedent to avoiding the release for fraud, viz. the return or tender of the consideration for the release, had not been complied with. *Levister v. Ry. Co., supra.* The underlying principle of the rule laid down in the *Levister* case is that the right of one to rescind a contract for fraud is subject to the condition that if, after discovery of the fraud, he still avails himself of the benefit of the contract, or permits the other party to proceed with the execution of it, he will be held to have

waived the tort and affirmed the contract. The plaintiff here knew of the alleged fraud, certainly, before the trial; he set it up in his reply to the answer. But he did not return or offer to return the money paid him until all the evidence had been adduced at the trial and a motion made to direct a verdict. In that situation we think there was clearly a waiver of any right the plaintiff might have had to avoid the contract for fraud.'' The rules of law, as stated in the above case, are applicable here, and we think are the correct ones.

It is our conclusion that the plaintiff in neglecting to tender to the defendant the consideration for the release in question, until after the defendant entered a motion for a directed verdict, is now barred from a recovery, and that the court erred in not sustaining defendant's motion for a directed verdict.

The judgment of the trial court is hereby reversed.

*Reversed.*