**Ray E. ISAACS, et al., Plaintiffs,**

v.

**CATERPILLAR, INC., Defendant.**

No. 88–1137.

United States District Court,
C.D. Illinois,
Peoria Division.

May 23, 1991.

George F. Galland, Jr., Chicago, Ill., Patricia C. Benassi, Peoria, Ill., Andrew H. Koor, O'Fallon, Mo., for plaintiffs.

J. Stephen Poor, Chicago, Ill., Theodore R. Johnson, Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Pending before the Court is Defendant's Motion for Partial Summary Judgment. For the reasons stated below, said Motion is denied, but the Court certifies this issue

**1362**

for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

# I. FINDINGS OF FACT

## A. *Proceedings to Date in the Litigation*

1. This lawsuit is brought by certain former management employees of Defendant Caterpillar, Inc. Plaintiffs are persons who retired or were separated from Caterpillar at various times between July 1985 and May 1987. The Plaintiffs allege that Caterpillar engaged in a pattern or practice of coercing older management employees into retiring or separating from employment on account of their age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The Defendant denies any wrongdoing. The complaint discloses that each Plaintiff, at the time of retirement or separation, signed a "Statement" that listed certain benefits to be paid to the Plaintiffs and including, among other provisions, language purporting to be a release. The complaint affirmatively alleges a number of legal and factual grounds why these "Statements" were insufficient to act as a release of Plaintiffs' ADEA claims.

2. The lawsuit was filed May 9, 1988, by 32 Plaintiffs. Over Caterpillar's objection, Plaintiffs sent a Court-approved notice to the class defined in the complaint, informing class members of the lawsuit and their right to join in by filing consents pursuant to the opt-in mechanism of ADEA class actions. In response to this notice, a number of additional Plaintiffs joined this suit. Two such Plaintiffs subsequently voluntarily dismissed their claims. The present total of Plaintiffs in the case is 70.

3. On May 31, 1988, Caterpillar filed its answer and counterclaim. The counterclaim, asserted against all Plaintiffs, asserted that the release language in the "Statements" constituted a contract not to file an ADEA lawsuit challenging those terminations. The counterclaim asserted that the filing of this lawsuit constituted a breach of that contract. As damages for this alleged breach, this counterclaim sought (a) the return of the benefits listed in the "Statements," (b) a declaration that Caterpillar was not required to make further payments called for by the "Statements," and (c) the attorney's fees and costs spent by Caterpillar to defend against this litigation.

4. On motion by the Plaintiffs, this Court dismissed the counterclaims on September 3, 1988 for failure to state a claim on which relief could be granted. *Isaacs v. Caterpillar*, 702 F.Supp. 711 (C.D.Ill.1988).

5. Following the dismissal of the counterclaims, and upon completion of the process of allowing class members to join the lawsuit, the parties engaged in intensive discovery.

6. In September of 1989, Plaintiffs moved the Court to hold a "test case" trial. This motion contemplated trial of a selected group of Plaintiffs' cases as a means to promote the expeditious resolution of the entire litigation. The Court granted this motion and held further proceedings to determine the number and identities of the "test case" Plaintiffs. The Court determined that the test case would consist of trying twelve Plaintiffs' claims. The Court designated the organizational areas from which the Plaintiffs would be chosen, and ordered the parties to make alternating selections. The parties chose the test-case Plaintiffs on May 31, 1990, and the Court set a trial date of January 14, 1991.

7. On August 27, 1990, the Equal Employment Opportunity Commission (EEOC) was granted leave to intervene as an additional party Plaintiff. Caterpillar answered the EEOC's complaint on September 10, 1990.

8. A series of discovery disputes during the summer of 1990, including the production by Caterpillar in August 1990 of a large number of important documents that should have been produced at the start of the lawsuit, led to a motion by Plaintiffs for sanctions and to continue the trial date. The Court granted Plaintiffs' motion on October 1, 1990. The Court continued generally the proceedings to quantify the sanctions award, and reset the trial date to May 6, 1991.

9. Following this ruling of October 1, 1990, the parties prepared intensively for trial. Document production continued, and more than 60 depositions were taken, including several depositions in Florida, Mississippi, and Missouri. The parties prepared a voluminous pretrial order, and a final pretrial conference was held on April 24, 1991.

10. On April 23, 1991, one day before the scheduled final pretrial conference and 13 days before the scheduled trial date, Caterpillar filed a motion for summary judgment. The motion asserted that Plaintiffs' claims are barred as a matter of law because they had "ratified" the release language contained in the "Statements" they had signed by failing to tender to Caterpillar, at the outset of this litigation, the consideration listed in the "Statements." This matter will be henceforth referred to as the "tender/ratification argument."

11. Until it filed this motion for summary judgment, Caterpillar had never specifically raised the tender/ratification argument, whether formally or informally, in any motion, Court hearing, or other paper filed with the Court.

12. Caterpillar's answers in this litigation contain affirmative defenses based on the release language in the "Statements." In its answer of May 31, 1988, to the private Plaintiffs' complaint, Caterpillar's third affirmative defense reads, in its entirety:

> The claims of each of the Plaintiffs are barred by full and complete releases knowingly and voluntarily executed by each Plaintiff in exchange for valid consideration.

Caterpillar's answer to the EEOC's complaint contains a first affirmative defense reading, in its entirety:

> Defendant states that Plaintiffs have released and forever waived the claims which are raised in the Complaint.

13. Caterpillar bases its summary judgment motion on two very recent decisions from the Fourth and Fifth Circuit Courts of Appeal, *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358 (4th Cir.1991) and *Gril-*

*let v. Sears, Roebuck & Co.*, 927 F.2d 217 (5th Cir.1991).

14. Plaintiffs filed their response to Caterpillar's motion on April 29, 1991. Caterpillar replied on May 2, 1991, and Plaintiffs filed a surreply on May 2, 1991. On May 3, 1991, this Court heard extensive oral argument from both parties.

15. After argument by both parties, this Court orally ruled that it would deny Caterpillar's motion for summary judgment, but that such ruling would not be final until a written order was entered.

16. At the time of the cessation of their active employment with Caterpillar, Inc., each of the test case Plaintiffs, except Plaintiffs Chester and Levenick, executed the following release:

> In consideration of receiving the especial arrangement as described above, I release and forever discharge Caterpillar Tractor Co., and its subsidiaries, of and from any and all claims, causes of action, damages and liabilities whether or not known, suspected or claimed by me which I may have relating to my retirement from active employment, or which are related to any act, course, or thing which could have been alleged in any action based on such retirement.
>
> I have read the above and understand the items described in this statement, including the releases.

This particular language was set forth immediately above the signature line on a two-page form.

17. The language of the release signed by Plaintiffs Chester and Levenick contains an immaterial difference from the above language. The Chester and Levenick releases do not contain the last phrase in the first paragraph which reads, "or which are related to ..."

18. In exchange for execution of the release, the test case Plaintiffs received substantial consideration beyond that to which they were entitled under the normal retirement plan. These benefits included the following:

(a) An additional payment of $400 per month for a specified period of time, or the equivalent in a lump sum payment.

To date, Plaintiffs have received the following amounts pursuant to this provision of the agreements they executed.

1. Barlow: $26,457
2. Stone: $12,800
3. Foss: $ 9,600
4. W. LeDocq: $32,922
5. G. LeDocq: $32,922
6. Chester: $ 9,600
7. Kessell: $30,143
8. Dill: $19,600
9. Gosbin: $24,400
10. Levenick: $22,400
11. Fraley: $28,000

(b) In addition, those Plaintiffs who were part of the Marketing reorganization received additional payments equal to three times their monthly base salary less applicable tax withholding amounts and amounts owed to the Company. These payments were:

1. Dill: $12,987
2. Foss: $16,503
3. Fraley: $12,987
4. Gosbin: $ 8,529
5. Stone: $14,802

(c) A continuation of full life insurance coverage during the period the retiree is entitled to the $400 payment, a benefit which would otherwise be reduced upon retirement;

(d) Increased pension payments by virtue of a reduction in the penalty for taking early retirement under the normal plan for all Plaintiffs except Plaintiffs Chester and Foss.

Plaintiffs Fraley and Gosbin are still receiving monthly $400 checks from the Company.

19. At no time have any of the Plaintiffs returned or attempted to return the consideration received for the release.

20. Plaintiffs' complaint attacks the validity of the "Statements" for purposes of releasing claims under the ADEA. Among other things, the complaint alleges that releases were not given on a knowing and voluntary basis; that they are invalid for want of consideration; and that they were obtained through the use of bad faith, oppression, and overreaching.

21. Prior to April 23, 1991, Caterpillar had never moved for dismissal or summary judgment on the basis of these "Statements." Moreover, the present motion does not deal with the merits of Plaintiffs' attack on the "Statements" as releases of ADEA claims. For purposes of the present summary judgment motion, counsel for Caterpillar asked the Court during oral argument to assume that the "Statements" would not be valid releases of ADEA claims were it not for their having been "ratified" by Plaintiffs' failure to tender the consideration purportedly received in exchange for signing the "Statements."

22. At no time prior to the recent filing of its motion for summary judgment did Caterpillar specifically argue or imply (1) that any Plaintiff was required to tender to Caterpillar the benefits listed in his or her "Statement on the Special Retirement Supplement" as a condition of pursuing this lawsuit, or (2) that any Plaintiff, through failure to make such a tender or through any other conduct whatsoever, had "ratified" the release language contained in the "Statements."

23. Two Plaintiffs have died since this suit began: John Mellie and Russell Bovee. 43 of the 70 Plaintiffs are over 60, including 6 of the 11 test-case Plaintiffs (Chester, 66; Dill, 64; Foss, 66; Fraley, 62; Levenick, 63; Stone, 65). 13 of the 70 Plaintiffs are over 65, including two of the test-case Plaintiffs (Chester and Stone).

II. CONCLUSIONS OF LAW

1. Caterpillar's motion takes the date of filing of the lawsuit as the date by which Plaintiffs undisputably had notice of the grounds they had for seeking to void the purported releases. Caterpillar contends that once they had such notice, Plaintiffs were then required to tender to Caterpillar the monetary benefits listed on the "Statements." Caterpillar asserts that by failing to make such a tender, and instead retaining those benefits during the three years of this litigation, Plaintiffs have "ratified" these releases as a matter of law and are therefore precluded from raising any legal

challenge to the releases' underlying validity.

2. This motion raises no issue of validity of Plaintiffs' various grounds for asserting that the "Statements" themselves did not constitute valid releases of their ADEA claims. At oral argument, Caterpillar confined its argument to the tender/ratification issue, and asked this Court to assume for the sake of this motion that "the releases were entered into either as a result of duress, fraud, or mistake because the Plaintiffs did not know what they were signing." Transcript of proceedings of May 3, 1991, p. 3. For the purposes of this motion, the Court makes such an assumption. Because Caterpillar has explicitly limited the issue on this motion in this fashion, Plaintiffs have not been required or expected by the Court to offer evidence on this motion that would support their complaint's asserted grounds for refusing to treat the "Statements" as valid releases of their ADEA claims.

3. Similarly, this motion raises no issue of the Plaintiffs' failure to make a tender to Caterpillar prior to the time they filed their lawsuit. Caterpillar has not claimed, or offered evidence, that Plaintiffs had notice of the grounds for attacking these releases at any earlier point than the date they filed this lawsuit. Instead, it explicitly has taken the date of filing the lawsuit as the date by which Plaintiffs indisputably had notice of the grounds for attacking the "Statements" as releases.

4. Accordingly, in the circumstances of this case, Caterpillar's sole argument is that any ADEA Plaintiff who has signed a release is obliged to make, at the beginning of the lawsuit, a tender to the Defendant of the consideration paid for the release. Caterpillar argues that failure to make that tender, and retention of the consideration during the pendency of the suit, constitutes, as a matter of law, a "ratification" of the release, notwithstanding the fact that the lawsuit itself explicitly seeks to have the release declared invalid.

5. Caterpillar bases its argument primarily on two recent Court of Appeals decisions: *Grillet v. Sears, Roebuck & Co.*, 927 F.2d 217 (5th Cir.1991), and *O'Shea v. Commercial Credit Corporation*, 930 F.2d 358 (4th Cir.1991).

6. For the reasons that follow, although this Court concludes that Caterpillar did not waive the tender/ratification argument by failure to raise it at the start of the lawsuit or at any time thereafter until the present motion was filed, Caterpillar's motion must be denied.

 Initially, the Court concludes that in general there is no requirement under the ADEA that a plaintiff who has signed a release tender to defendant the consideration received for the release as a condition of challenging the release. Accordingly, a plaintiff who retains the consideration during the pendency of an ADEA lawsuit challenging that release does not "ratify" the releases. Second, the Court concludes that even if there were such a tender requirement, there would be a clear issue of fact in the present case of whether such a tender would have been futile.

### A. Caterpillar Did not Waive the Defense Raised by Its Summary Judgment Motion

7. Contrary to Plaintiffs' contention, Caterpillar did not waive the issue raised in its summary judgment motion and that issue is properly before the Court.

 8. Caterpillar's answer generally raised as an affirmative defense that "the claims of each of the Plaintiffs are barred by full and complete releases." Defendant's ratification argument raised in its summary judgment motion is one of the grounds asserted for enforcing the release and, therefore, its affirmative defense is sufficient to preserve the issue under the Federal Rules of Civil Procedure.

9. Plaintiffs were on notice that Caterpillar intended to rely on the releases as a defense. Thus, Caterpillar met its pleading obligations by the assertion of "release" as an affirmative defense. *See, Holzsager v. Valley Hosp.*, 646 F.2d 792, 795–6 (2nd Cir.1981) (affirmative defense that the court "lacked jurisdiction over the person of the defendant" was broad enough to

encompass the defense of lack of *quasi-in-rem* jurisdiction).

10. Here, Plaintiffs put the overall validity of the releases in issue in their own complaint. (*See* Complaint and Answer at ¶¶ 11, 12 and 16). In addition, Caterpillar filed a counterclaim with its answer alleging a breach of contract, in that, *inter alia*, "the agreements executed by each of the plaintiffs were made knowing and voluntarily by each plaintiff ..." and "the actions taken by plaintiffs in commencing this lawsuit are in violation of their agreements ..." (Def. Counterclaim at ¶¶ 4 and 5). The Company sought repayment of the monies paid pursuant to the releases and an order that Plaintiffs were not entitled to any further payments under the agreements. Further, the class notice refers to the release. In view of these additional pleadings, the overall validity of the releases was at issue—under whatever specific legal theories Defendant might assert.

B. *The Hogue Decision Rules Out a Tender Requirement for ADEA Plaintiffs Challenging Releases*

11. The case of *Hogue v. Southern R. Co.,* 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968) is highly instructive on the issue before the Court. Although *Hogue* involved an FELA case rather than an ADEA case, the same public policy interests attach, and the Court believes that *Hogue* is the most persuasive law relating to this matter. The *Hogue* decision is neither mentioned or discussed in either *Grillet* or *O'Shea.*

12. *Hogue* was a suit under the Federal Employers Liability Act (FELA) by an injured railroad employee. The employee had signed a release in exchange for $105. Later he sued, alleging that the release was void for mutual mistake of fact. He did not tender the consideration he had been paid for the release. Georgia courts held that (1) Georgia law applies, and (2) under that law, failure to tender constituted ratification, requiring the suit to be dismissed.

13. The Supreme Court reversed both holdings. It held that "[t]he question whether a tender back of the consideration was a prerequisite to the bringing of the suit is to be determined by federal rather than state law." 390 U.S. at 517, 88 S.Ct. at 1151. Then the Court held:

It is sufficient for the purposes of this decision to note that a rule which required a refund as a prerequisite to institution of suit would be "wholly incongruous with the general policy of the Act to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers." *Dice v. Akron, C. & Y. R. Co.,* [342 U.S. 359], 362 [72 S.Ct. 312, 314, 96 L.Ed. 398]. Rather, it is more consistent with the objectives of the Act to hold, as we do, that it suffices that, except as the release may otherwise bar recovery, the sum paid shall be deducted from any award determined to be due to the injured employee.

390 U.S. at 518, 88 S.Ct. at 1152.

■ 14. Lower courts have applied *Hogue* to reject tender requirements in lawsuits under other federal remedial statutes. *See, e.g., Smith v. Pinell,* 597 F.2d 994, 996 (5th Cir.1979) (Jones Act); *Wahsner v. American Motors Sales Corp.,* 597 F.Supp. 991, 998 (E.D.Pa.1984) (Automobile Dealers' Day in Court Act); *Taxin v. Food Fair Stores, Inc.,* 197 F.Supp. 827, 830–31 (E.D.Pa.1961) (Sherman Antitrust Act). Moreover, courts interpreting *Hogue* have made clear that the particular ground on which a release is challenged makes no difference; there is no tender requirement, period. *See, e.g., Mohr v. Pennsylvania R. Co.,* 409 F.2d 73, 75 (3rd Cir.1969).

■ 15. Under *Hogue,* whether a tender requirement exists is not to be decided by state contract law doctrines. It is a federal question, and must be decided by considering whether such a requirement would be "incongruous with the general policy" of the statute in question.

16. Like the FELA in *Hogue,* or the other statutes interpreted by the above decisions, the ADEA is a remedial statute. Moreover, both the FELA and the ADEA are remedial statutes intended to protect

employees. No apparent reason exists not to apply *Hogue* to the ADEA.

17. In fact, four special factors associated with the ADEA make it particularly necessary to apply the rule of *Hogue* to ADEA suits.

(a) *Hogue* rests on the view that a tender requirement would deter meritorious challenges to releases in FELA lawsuits. A tender requirement will have just as crippling an effect on ADEA challenges—particularly in the context of early retirement programs. In general, retired employees need all the security they can get; Congress has passed ERISA and other laws based on this assumption. Such workers are unlikely to be able to put their severance payments aside for future "tenders," or to be able to come up with the money to make such a tender at such later time as they acquire grounds to believe that a successful lawsuit might be mounted in connection with their retirements.

(b) Congress has clearly exhibited a continuing preoccupation with ADEA releases. In 1987, the EEOC prescribed a rule that would have allowed releases of ADEA claims under certain conditions even though they had not been supervised by a court or administrative agency. Congress immediately suspended the application of that rule, and continued to suspend it in later years' appropriations bills. *See, e.g.,* 113 Cong.Rec. H12401, 12534 (December 21, 1987); 134 Cong.Rec. H8399 (September 27, 1988). This issue was resolved last year when Congress passed the Older Workers Benefit Protection Act, which severely restricts the use of releases under the ADEA, particularly in early retirement programs. The Act imposes a list of specific requirements in connection with obtaining ADEA releases. 29 U.S.C. § 626(f). This Congressional history is relevant to the tender issue, because *Hogue* instructs federal courts to consider whether a tender requirement would interfere with the remedial purposes of the statute. As discussed above, a tender requirement will likely make it impossible for most employees to challenge ADEA releases—a result Congress plainly does not want. Congress's views on this subject are entitled to respect as this Court considers the effect on the ADEA of a tender requirement.

(c) A related reason for applying *Hogue* to the ADEA is that a tender requirement for challenging ADEA releases would as a practical matter undo the waiver provisions of the Older Workers Benefit Protection Act. No matter how egregiously releases might violate the requirements of the Older Workers Benefit Protection Act, employees would be precluded from challenging them unless they somehow could come up with the money they were given when allegedly forced into retirement.

(d) Imposing a "tender" requirement for challenges to ADEA releases would frequently create insoluble practical problems.

(1) *O'Shea* and *Grillet* assume that it is clearcut what consideration must be tendered in order to restore the parties to the condition that would exist had the employee never signed the release. In many claims, such as personal injury claims, this is a fair assumption. A plaintiff, after being injured, is offered money and signs a release. To restore the parties to their pre-release condition, the plaintiff tenders the money he was given for the release, and the defendant accepts that money and rescinds the release.

(2) Under the ADEA, however, this simplicity frequently will not exist, especially in the case of early retirement programs. The purpose of such programs is to induce people to retire earlier than they otherwise would have done. Such early retirement is an economic benefit to the company. To get it, the company offers the employee money for leaving early. If the company has plaintiffs sign a release in connection with these incentive retirement payments, the *status quo* is *not* restored if the employee tenders the consideration received in connection with his retirement and the employer accepts it and rescinds the release. To the contrary, such an exchange would arguably unjustly enrich the employer. The employee is deprived of money paid to induce him to retire, yet he or she is not restored to employment; all he or she gets is the rescission of his or her release.

(3) A tender requirement in such cases would therefore create a conundrum as to how much should be tendered to restore the pre-release *status quo.* There is no available method of forcing the parties to agree on what an appropriate amount would be, since typically the employer does not specify how much of the consideration paid to the employee is for the retirement and how much is for the release.

(4) This problem exists in the present case. As to five of the 11 test case Plaintiffs, there is an issue of the voluntariness of their retirements. As a matter of policy, it would be unjust to require these five Plaintiff to tender back all the consideration described in their "Statements" on the basis that Caterpillar maintains that these men voluntarily retired in response to the incentive of those benefits. Caterpillar has not indicated that it would put these men back to work in connection with this "tender." Accordingly, if a tender requirement applied to these five men, some method would have to be found to determine what amount would "restore" matters to a *post-retirement* but *pre-release* "status quo." No such method of determining such an amount is apparent to the Court, at least in the context of summary judgment.

(5) In short, a tender requirement for challenging ADEA releases would frequently raise an insoluble dispute of how much the employee should be required to tender. It would not serve the purposes of the ADEA to impose a tender requirement that creates such disputes.

18. The Court has considered Caterpillar's arguments for trying to distinguish *Hogue,* or for declining to apply it to the ADEA, and finds them to be without merit.

(a) Caterpillar's original ground to distinguish *Hogue* was that § 5 of the FELA "specifically prohibits releases," and that this prohibition led the Supreme Court to reject a tender requirement for challenging releases. See Caterpillar's Reply Memorandum in Support of Its Motion for Summary Judgment, p. 9. This argument was illogical, unsupported by the opinion in *Hogue,* and contrary to *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630–631, 68 S.Ct.

296, 298–299, 92 L.Ed. 242 (1948), which had held that FELA § 5 *did* allow releases.

(b) When Plaintiffs pointed this out, Caterpillar shifted ground at oral argument, acknowledging that it had "overstated" the impact of FELA § 5 on releases. But Caterpillar continued to assert that § 5 had been responsible for the result in *Hogue.* Caterpillar now argues that § 5, quoted in *Hogue* (390 U.S. at 517 n. \*, 88 S.Ct. at 1152 n. \*), "provides a setoff procedure" for payments made by the employer, and that because of this "setoff procedure," the Court viewed a tender requirement as inappropriate for challenging ADEA releases. This argument has no more merit than the one it replaced. The "setoff procedure" of FELA § 5 has nothing to do with releases. It simply restricts the "collateral source" rule for FELA cases. Moreover, nothing in *Hogue* suggests that the Court relied on this provision in reaching the result it reached.

(c) Caterpillar also argues that *Hogue* should not be applied to the ADEA because the ADEA "encourages voluntary settlement." Caterpillar asserts that this policy is violated by allowing Plaintiffs to challenge the validity of their releases without tendering the consideration. The Court finds this argument unconvincing. The ADEA does indeed encourage voluntary settlement, but it does not do so through the obtaining of allegedly invalid releases. In fact, the ADEA is unique among federal statutes in its legislative history of Congressional concern about the misuse of releases.

(d) At oral argument, although not in its briefs, Caterpillar offered an economic theory to reinforce its "encourage settlement" argument. Caterpillar argued that a tender requirement would make both Plaintiff and Defendant evaluate their positions in a realistic manner. As Caterpillar envisions it, the Plaintiff would have to make a judgment as to whether the risk-discounted payoff from his lawsuit exceeds the amount he would have to give back to void the release. The employer would then be required to make a judgment as to whether the risk-discounted exposure from the suit,

in the absence of the release defense, exceeds the amount it would get back by accepting the tender. If the Court understands this argument correctly, Caterpillar says that by being forced to make such calculations, the parties are forced to make realistic evaluations of their litigating positions, and that such "realism" will then encourage them to explore settlement. The Court finds this theory unconvincing for several reasons:

(1) This theory is no more applicable to the ADEA than it is to any other statute. It therefore offers no ground to distinguish *Hogue*.

(2) *Hogue* says nothing about this theory, and no other case has ever hinted at it in deciding whether to impose a tender requirement.

(3) Caterpillar's theory assumes that the employee has the money to make a tender. If, as is more likely, he does not, then Caterpillar's theory is irrelevant.

(4) The ADEA already has a specific mechanism—conciliation before suit through the EEOC—designed to spur the parties to explore settlement. This mechanism makes the "explore settlement" rationale for imposing a tender requirement redundant.

(e) Caterpillar next argues that all the reported authority under the ADEA supports its tender/ratification argument and that no case applies *Hogue* in the ADEA context. It is clear, however, that the federal courts are only beginning to deal with the tender/ratification argument. To date there are a mere handful of reported ADEA or Title VII cases on this issue. None of them has analyzed the issues in depth. For example, *Grillet* and *O'Shea* never mention *Hogue*, and never analyze whether a tender requirement is consistent with the purposes of the ADEA. In any case, while this Court has the greatest respect for the Fourth and Fifth Circuits, it must follow the law as laid down by the Supreme Court in *Hogue*, and must apply that law to the ADEA unless some tenable reason exists not to do so.

(f) Caterpillar takes issue with Plaintiffs' argument that a tender requirement will have a particularly severe deterrent effect on challenges to releases by older workers, the group protected by the ADEA. Caterpillar says that "on the contrary, in this case the Plaintiffs are management level, sophisticated individuals." Caterpillar Reply Memorandum, p. 10. This argument is without merit. Whether to exempt the ADEA from the *Hogue* rule cannot be determined on an *ad hoc* basis by reference to the resources or "sophistication" of particular plaintiffs, but only by reference to the overall purposes of the ADEA and the overall characteristics of the group protected by the ADEA. Second, the degree of "management level" or "sophistication" of the test case Plaintiffs has little to do with whether they can afford to make a tender.

(g) In response to the argument that a tender requirement would largely nullify the Older Workers Benefit Protection Act (OWBPA), Caterpillar asserts that the OWBPA is not retroactive and therefore has no bearing on this issue. This argument is unresponsive to the point made by Plaintiffs. Neither the text nor the legislative history of the OWBPA says anything about tenders as a condition of challenging releases. The law of tender, therefore, is presumably the same after the OWBPA as it was before it. If there was a tender requirement before the OWBPA, then there still is one; if there was not, then there still is not. This point weighs heavily against the existence of a judge-made tender requirement under the ADEA, because such a judge-made requirement would eliminate the ability of most employees to challenge releases obtained in violation of the OWBPA.

(h) Caterpillar also disputes Plaintiffs' point that it is frequently difficult to determine how much of the consideration must be "tendered" in order to restore the parties to their position before the release was signed. Caterpillar says that in this case, "The benefits received are specifically listed in the same document just above the release language. There is no question as to the consideration." Caterpillar Reply Memorandum, p. 11. This argument asserts that all the benefits in the "State-

ment" can be considered legal consideration for the release, and that therefore the Plaintiffs must tender back all those benefits to challenge the release. This argument fails to meet Plaintiffs' point, which is that such a tender, as to many of the Plaintiffs, would appear to leave the employer better off and the employee worse off than they were in the pre-release *status quo.*

■■■ 19. In addition to being inconsistent with *Hogue*, a tender requirement would be inconsistent with this Court's ruling dismissing Caterpillar's counterclaims.

(a) The Court held that the good-faith filing of an ADEA lawsuit by Plaintiffs who have signed releases of the type found in this case is not a breach of contract giving Caterpillar any right to damages in the amount of the consideration paid for the releases, or for the fees and costs incurred in defending the lawsuit. *Isaacs v. Caterpillar*, 702 F.Supp. 711 (C.D.Ill.1988). Thus, the Court has held that Plaintiffs cannot be assessed damages in the amount of the consideration paid for the purported releases if they *lose* their attack on those releases. Yet Caterpillar says they must tender that consideration in order to *bring* an attack on the releases. That is illogical.

(b) Moreover, the considerations that led this Court to dismiss the counterclaims control the present issue as well. This Court concluded that even if contract-law doctrines would support a damage counterclaim based on breach of a release, those doctrines of necessity must give way to the purposes of the ADEA, because such doctrines would have "had the potential of deterring the bringing of good faith ADEA claims." 702 F.Supp. at 715. In its capacity to deter such claims, the tender requirement advocated by Caterpillar is just as powerful as a damage counterclaim.

20. Caterpillar makes the following argument to try to reconcile a tender requirement with this Court's prior counterclaim ruling. Caterpillar Reply Memorandum, p. 15:

[In the counterclaim ruling], this Court held that Caterpillar could not assert a breach of contract action against Plaintiffs. Instead, the Court instructed Caterpillar to use the releases defensively. This Court's ruling on the counterclaim forecloses Caterpillar from recouping the consideration that it paid and thereby prohibits the parties from returning to the pre-litigation status quo. Thus, the ratification doctrine is the only way to protect the value of a release which, in turn, promotes the voluntary settlement of claims.

The Court rejects this argument for two reasons:

(a) Caterpillar appears to be arguing that it needs a tender requirement in order to circumvent the effect of this Court's counterclaim ruling. That is a reason to reject the tender requirement, not to adopt it.

(b) Caterpillar's argument depends on the erroneous assertion that if Plaintiffs are allowed to file a lawsuit, Caterpillar has been deprived of the consideration it paid Plaintiffs based on the release. Caterpillar states this explicitly when it says, "The consideration paid by Caterpillar is the right to be free from a lawsuit." Caterpillar Reply Memorandum, p. 14. This Court rejected this assertion on the counterclaim ruling. 702 F.Supp. at 714–715, and rejects it now.

■■■ (1) A release, unless explicitly worded as a promise not to file a lawsuit, gives Caterpillar no "right to be free from a lawsuit." Rather, as this Court has previously held, such a release merely gives Caterpillar a defense to be asserted in a lawsuit once it is filed. The filing of this lawsuit therefore did nothing to "strip" Caterpillar of the consideration it paid for the "Statements." Caterpillar still can use those Statements as a defense to liability in this suit. It has vigorously asserted that defense, and it is certainly possible that the defense will ultimately prevail.

(2) It is true that Caterpillar has not been able (and until this motion, has not tried) to use the "Statements" to secure summary disposition of his case. But that does not mean Caterpillar has been "stripped" of the consideration it paid to

get the releases. It simply means that Caterpillar has deemed the releases to be an inappropriate basis upon which to seek summary judgment.

(3) In short, a release is merely a potential defense to a lawsuit once filed. Assuming that Caterpillar paid to obtain that potential defense, it still has what it paid for. What it paid for was a defense—not a guarantee that no lawsuit would be filed, and not a guarantee that the defense would summarily win. Nothing about this lawsuit to date has "stripped" Caterpillar of whatever consideration it paid to obtain this defense.

21. An additional reason to reject a tender requirement under the ADEA is that the Court believes that such a requirement could not apply to the EEOC in suits to enforce the Act. It therefore seems pointless to impose a special requirement on private plaintiffs that is not imposed on the EEOC.

(a) The EEOC has the right to bring ADEA lawsuit in its own name to secure the rights of individual employees. The EEOC's right to sue is independent of the employee's private action rights. *General Telephone Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). As *General Telephone* put it, the EEOC "is not merely a proxy for the victims of discrimination," but "acts also to vindicate the public interest in preventing employment discrimination." *Id.* The EEOC does not need the employees' permission to bring such suits. In fact, if the EEOC sues first, the employee is precluded from filing. 29 U.S.C. § 626(c)(1). The EEOC has exercised its enforcement powers by intervening in this case as a party Plaintiff.

(b) The EEOC's independent enforcement powers are clearly inconsistent with a tender requirement. Such a requirement would make the EEOC's ability to sue contingent on its ability to persuade an employee to make a tender to Defendant.

(c) Imposing a tender requirement on the EEOC would also violate the Congressional purpose of allowing the ADEA to be enforced through EEOC suits where private plaintiffs lack the resources to bring their own lawsuits.

(d) The Court's conclusion that the EEOC cannot be subjected to a "tender" requirement reinforces its conclusion that such a requirement should not be imposed for private plaintiffs. It makes little sense to have two different sets of rules in this regard, depending only on the identity of the plaintiff, especially in a case such as this one, which is brought both by individual employees and the EEOC.

22. Caterpillar's reply brief discloses that it does not seek summary judgment against the EEOC. However, Caterpillar argues that failure by the individual Plaintiffs to tender the consideration for releases forecloses the EEOC from seeking back pay for those Plaintiffs. Caterpillar bases this argument on *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir. 1987) and *EEOC v. McLean Trucking Co.*, 525 F.2d 1007 (6th Cir.1975), which held that where an employee has reached a valid settlement of his claims, the EEOC cannot seek back pay on his behalf. Caterpillar's argument, however, begs the question. It assumes there has been a valid settlement of the private Plaintiffs' claims. But that is one of the hotly disputed factual issues in this case. Because it is, there is no basis for putting obstacles in the way of the EEOC as a precondition of raising legitimate challenges to employees' releases.

23. For the foregoing reasons, the Court concludes that as a matter of federal law, there is no requirement that ADEA plaintiffs tender the consideration received for releases as a condition of challenging those releases in a lawsuit. For the same reasons, the retention by Plaintiffs of the benefits they received under the "Statements" during the pendency of this lawsuit does not constitute "ratification" of those releases.

### C. *"Ordinary Contract Principles" Do Not Require a Tender Requirement*

24. The handful of decisions that have recently adopted a tender/ratification rule have purported to look to state-law "ordinary contract principles." As discussed

above, given *Hogue* and the powerful reasons for applying it to the ADEA, this Court disagrees with these courts' approach to this issue. In addition, however, this Court concludes that these courts have taken an incorrect view of how a tender requirement fares under "ordinary contract principles" of state law.

25. *Grillet* and *O'Shea* assume that it is a universally accepted rule of state contract law that a person who has signed a release must tender the consideration to a defendant prior to suing to void the release. There is no such unanimity. Rather, as one court put it, the cases are in "hopeless disagreement" on this issue. *Taxin v. Food Fair Stores, Inc.*, 197 F.Supp. 827, 831 (E.D.Pa.1961). An ALR annotation of the conflicting state court views on this issue runs to 175 pages. Annotation, "Tender as a Condition of Action—Release," 134 A.L.R. 6.

26. Some states impose no tender requirement for lawsuits that challenge releases. Some states impose tender requirement for certain kinds of challenges to releases but not for others, becoming enmeshed in the technicalities of "void" versus "voidable" contracts. Some states impose universal tender requirements. Some states cannot make up their minds from decision to decision.

27. Illinois illustrates this state of affairs. Modern authority suggests that Illinois has abandoned a tender requirement. *Ruggles v. Selby*, 25 Ill.App.2d 1, 165 N.E.2d 733, 743 (1st Dist.1960), *Ruggles* held that no tender was necessary in a case seeking to void a release on the grounds of mutual mistake of law. Earlier cases dealing with releases that were attacked on grounds of fraud had reached various different conclusions that are almost impossible to reconcile. *See, Star Accident Co. v. Sibley*, 57 Ill.App. 315 (1895) (declining to require a tender in cases involving fraud); *Chicago Union Traction Co. v. Mommsen*, 107 Ill.App. 353 (1903); *Worthey v. Cleveland, C.C. & St. L.R. Co.*, 251 Ill.App. 585 (1929) (holding tenders sometimes required and sometimes not).

28. The confusion among state jurisdictions on this issue is reason enough for this Court to decide this motion not on the basis of state-law contract doctrines but—as *Hogue* commands it to do—on the simple basis of what rule best serves the purposes of the ADEA.

29. However, if the Court were to decide this issue by reference to state contract principles, it would be appropriate to follow the American Law Institute's *Restatement of Contracts*. Under the *Restatement*, a tender is not required where the consideration for the release "is merely money paid, the amount of which can be credited in partial cancellation of the injured party's claim." *Restatement of Contracts*, § 480; *Taxin v. Food Fair Stores, Inc.*, supra, 197 F.Supp. at 827. *See also, Restatement (Second) of Contracts*, § 384(1)(b), which excuses a tender of the consideration where the "court can assure such return [of the consideration] in connection with the relief granted."

30. This case fits the *Restatement* rule. As *Taxin* put it, citing § 480 to deny a tender requirement:

> Should the plaintiffs ultimately obtain a judgment against the defendants, the latter could be protected by our crediting the amount they paid for the release against the amount of the judgment.

197 F.Supp. at 827.

31. Section 480, and the principle it articulates, are never mentioned by *Grillet* or *O'Shea*—even though *O'Shea* explicitly claims to decide the tender issue by reference to "ordinary contract principles." Section 480 represents the best thinking of "ordinary contract principles" on this matter. It squares with common sense. It avoids a clash with the purposes of the ADEA. It echoes the conclusion that *Hogue* reached as a matter of federal law—that "except as the release may otherwise bar recovery, the sum paid shall be deducted from any award determined to be due to the injured employee." 390 U.S. at 518, 88 S.Ct. at 1152.

32. Caterpillar's reply brief offers a number of arguments to defend the view of

"ordinary contract principles" taken by *Grillet* and *O'Shea.*

(a) Caterpillar tries to distinguish between the questions of (1) whether a tender of the consideration is a condition precedent to suing to challenging a release, and (2) whether retaining the benefits rather than tendering them constitutes a ratification of the release. Caterpillar Reply Memorandum at p. 11. This argument seems to assert that, while state contract law may be contradictory on the former question, it is uniform on the latter question, and this case concerns only the latter question. If this is Caterpillar's argument, it is without merit.

(1) Caterpillar's attempt to distinguish between two versions of the "tender" requirement is untenable. It only serves to illustrate the general confusion on this issue prevailing in state jurisdictions. States that require a tender to challenge a release sometimes use the language of "condition precedent to suit," and sometimes use the language of "ratification." But there is no meaningful difference between the two. It is impossible to understand how a person can ratify a release by not making a tender if he can sue to challenge the release without making a tender. No state court decision cited by Caterpillar has explained the difference between failure to tender as barring suit and failure to tender as constituting "ratification." In fact, the case cited by Caterpillar, *Roggenkamp v. Marks*, 299 Ill.App. 209, 19 N.E.2d 828 (2nd Dist.1939), clearly treats these rules as the same, and reflects the fact that Illinois law frequently does not treat failure to tender as a "ratification." 19 N.E.2d at 830.

(2) Moreover, in the circumstances of this case, there is no possible difference, even a theoretical one, between failure to tender as barring a suit and failure to tender as ratifying a release. Caterpillar says that Plaintiffs "ratified" their releases by filing a suit challenging them but without tendering the consideration in connection with that suit. In short, it is arguing that failure to tender at the start of a lawsuit constitutes ratification as a matter of law. That is precisely the same thing as arguing that there is a tender requirement for suing to challenge an ADEA release.

(b) Caterpillar next cites *Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). *Skelton* is inapposite.

(1) In *Skelton,* a class action lawsuit was settled. The settlement agreement called for plaintiffs' attorneys to apply to the court for attorneys' fees out of the settlement fund. The agreement provided that "the parties" would not appeal the district court's "lodestar" figure for the attorneys' fees. Despite this provision, one of the plaintiffs' attorneys appealed his "lodestar" award. The Court of Appeals held that the attorney was bound by the agreement, and hence could not appeal. It held that the phrase "the parties" included the attorneys for the parties. It also held that by following the procedures in the settlement agreement for obtaining fees, and by accepting the lodestar amount awarded him by the district court, the attorney had indicated his intent to be bound by the agreement. 860 F.2d at 250.

(2) Thus, *Skelton* involved no issue of a release, or even of rescission of a contract, much less whether a tender requirement should be imposed for challenging releases under important federal statutes. Rather, the only issue was whether the attorney in question was covered by the contract in question. The Court of Appeals plowed no new ground in holding the attorney's conduct in following the procedures provided by the agreement for getting paid, and accepting the payment awarded him pursuant to those procedure, indicated his intent to be bound by the agreement.

(c) Next, Caterpillar tries to distinguish § 480 of the *Restatement of Contracts.* It says that § 480 "assumes that the Plaintiffs will win," and appears to argue that § 480 is inapplicable if the defendant might win. Caterpillar Reply Memorandum, pp. 13–14. This argument is without merit. Nothing in § 480 states or implies that it assumes that the plaintiff is going to win the underlying claim for rescission.

(d) Similarly, Caterpillar misconstrues the language of § 384 of the *Restatement (Second)*. That section excuses a tender when the court can "assure" return of the consideration in connection with the relief granted. The word "assure" does not mean, as Caterpillar seems to think that the section applies only if plaintiff is sure to win. It simply means that if plaintiff does win, the court can deduct the consideration from the relief otherwise due plaintiffs. That condition is satisfied here.

(e) Caterpillar makes a related argument that § 480 is unfair because the Defendant might win the underlying lawsuit. In that case, says Caterpillar, it will have been "stripped of the consideration" that it paid for the release by the mere fact that the lawsuit was allowed to proceed. This Court has already dealt with this argument in its previous discussion of its prior counterclaim ruling. As noted there, the mere fact that Plaintiffs filed this lawsuit, and the mere fact that the releases are apparently insufficient to achieve summary disposition of the suit, does not "strip" Caterpillar of whatever consideration it paid to obtain its release defense.

33. For the foregoing reasons, this Court concludes that a tender requirement would be inappropriate in the circumstances of this case even if it were to look to "ordinary contract principles" to resolve this issue.

D. *Even If a Tender Requirement Existed, Summary Judgment Would Have To Be Denied Because Of Material Issues Of Disputed Fact On The Question Of Whether The Tender Would Have Been Futile*

■ 34. Even where the law requires a tender, such tender is excused if it would be futile. *See, e.g., Needy v. Sparks*, 74 Ill.App.3d 914, 30 Ill.Dec. 905, 908, 393 N.E.2d 1252, 1255 (1st Dist.1979); 74 Am. Jur.2d, *Tender*, §§ 4, 5. This general principle of the law of tender has been applied by jurisdictions that require a tender in connection with challenging releases. *See, e.g., Provident Life & Acc. Ins. Co. v. Priest*, 212 Ala. 576, 103 So. 678 (1925);

*Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 P. 609 (1895); *Jones v. New York Life Ins. Co.*, 32 Okl. 339, 122 P. 702 (1912); *Westerfield v. New York Life Ins. Co.*, 157 Cal. 339, 107 P. 699 (1910). Caterpillar has not disputed on this motion that a tender requirement for releases is subject to a "futility" exception.

■ 35. Caterpillar asserts that Plaintiffs should have tendered the consideration for their releases sometime between the start of this suit and the present. There is clearly a genuine issue of fact as to whether Caterpillar would have been willing to accept that tender in return for the rescission of the releases. The undisputed facts of Caterpillar's litigation conduct would justify a reasonable trier of fact in concluding that such a tender would have been rejected. These facts include the following:

(a) Caterpillar never suggested at any time in this litigation prior to the present that Plaintiffs should have tendered the consideration for their releases, much less that it might have accepted such a tender.

(b) At the start of the suit, Caterpillar filed an Answer and Counterclaim. This document simultaneously (1) asserted the "Statements" as a defense to the suit, and (2) asserted that Plaintiffs were, in addition, liable for damages for filing the suit at all. This litigation conduct was plainly inconsistent with the idea that Caterpillar would have been willing to accept a tender and throw away the "Statements" as a defense to this suit. To the contrary, it evidences an intent by Caterpillar to use the "Statements" both defensively and offensively.

36. In response to Plaintiffs' "futility" argument, Caterpillar asserts that it is "pure speculation" how it would have reacted to a tender if one had been made. The Court finds this argument to have no merit.

(a) Such an argument, if accepted, would nullify the "futility" exception. Whenever a "futility" issue arises, it is always the case that no actual tender has been made and the defendant was therefore not called

upon to accept or reject the tender. In such circumstances, the trier of fact must determine, from all the facts and circumstances, how the defendant would likely have responded to such a tender if it had been made. That question, in its nature, is one of probabilities, but it is not one necessarily limited to "speculation." Numerous facts and circumstances are available to help the trier of fact decide it. As an example, the facts of how Caterpillar has sought to use the "Statements" in this litigation speak directly to this question.

37. This Court finds that this Order denying Defendant's motion for summary judgment should be certified for immediate appeal pursuant to 28 U.S.C. § 1292(b).

38. This Order involves a controlling issue of law as to which there is substantial ground for difference of opinion and an immediate appeal from the Order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).

39. Whether Plaintiffs ratified the release agreements by retaining the consideration they received unquestionably raises a controlling issue of law. If Caterpillar is correct in its contention, the releases will be enforced and the Plaintiffs' claims will be barred. The EEOC's claims would remain, but a finding for Caterpillar on interlocutory appeal would potentially have a dramatic effect on the EEOC claims. Because release and other damage limitation questions generally are dispositive, it is not uncommon for such issues to be certified under § 1292(b). *See, Chan v. Korean Air Lines,* 490 U.S. 122, 109 S.Ct. 1676, 1679, 104 L.Ed.2d 113 (1989) (issue of enforceability of damage limitation contained in written notice to airline passengers certified for appeal under § 1292(b)); *Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1298 (5th Cir.1983) (validity of release executed by plaintiffs in antitrust suit appealed under § 1292(b)); *Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 887 (3rd Cir.1975) (same). *See also,* Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure,* § 3931 at 181 (1977) ("matters of defense may be similar-

ly suitable for [1292(b) ] appeal, [where] the effort is to defeat the entire claim, by such defenses as … as release").

40. Interlocutory appeals are particularly appropriate with respect to the enforceability of releases. Defendant argues that the consideration received by the defendant in exchange for the payment of benefits to the plaintiff is the right to be free from a trial. If this view is correct, and if the defendant is forced to wait for a determination of the validity of the release under after a full trial, it will have lost the practical and legal effect of its bargain before it has an opportunity to have the issue reviewed. Thus, the matter is particularly appropriate for a determination before trial. *See, Grillet,* 927 F.2d at 220–221 (release ratification issue reviewed in an interlocutory appeal pursuant to the collateral order doctrine because issue "effectively unreviewable on appeal from final judgment").

41. There also is no question that there are "substantial grounds for difference of opinion" on the applicability of the ratification doctrine in the ADEA context. This Court's opinion directly contradicts the recent decisions of the Fourth and Fifth Circuit Courts of Appeal in *Grillet* and *O'Shea* and decisions from district courts in other circuits. Further, this is a case of first impression in the Seventh Circuit which affords a further basis for certification. *Accord, O'Connor v. Commonwealth Edison Company,* 748 F.Supp. 672, 679 (C.D.Ill.1990) (certifying case for appeal when case was of first impression).

42. An immediate appeal would materially advance the ultimate termination of the litigation. Should the Seventh Circuit follow the Fourth and Fifth Circuits and reverse this Court's decision, Plaintiffs' claim will be barred, and the case will be terminated. *See, e.g., Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3rd Cir. 1974) (recognizing "clear intention" of sponsors of § 1292(n) "to avoid a wasted trial"); *Simmons v. Parkette National Gymnastic Training Center,* 670 F.Supp. 140, 145 (E.D.Pa.1987) (certifying release case for appeal in part because "if the

Circuit Court disagrees with our decision and concludes that the ... Plaintiff is bound by the agreement, the action will be at its end"). As mentioned earlier, even if Caterpillar prevails on interlocutory appeal, the EEOC claims would remain, but the pursuit of those claims would arguably be blunted by an adverse ruling for the Plaintiffs on this issue.

43. This is an age discrimination action by 70 Plaintiffs and intervenors in which this Court has ordered an initial test case trial of 11 of the Plaintiffs' claims. In a recently filed pre-trial order regarding the 11 test case Plaintiffs, the Plaintiffs listed 189 potential witnesses and 994 exhibits. Defendant listed 109 potential witnesses and 469 exhibits. The parties estimate that the trial will last 50 trial days or over two months. The substantial burden of trial on the Court, a jury, the witnesses and the parties may well be unnecessary if Caterpillar prevails on appeal. Thus, there is no question that an immediate appeal of the potentially dispositive release ratification issue may materially advance the ultimate termination of the litigation. *O'Connor v. Commonwealth Edison Co.*, 748 F.Supp. 672 (C.D.Ill.1990) (Mihm, J.) (appeal under § 1292(b) certified where one month trial anticipated).

44. Despite the foregoing, Plaintiffs have argued that this case should not be certified, primarily because an appeal will delay the trial in this matter and they will be prejudiced by such a delay. This assumes that Plaintiffs will prevail on appeal and there will be a trial. In any event, a temporary halt in district court proceedings is inherent in any § 1292(b) appeal, and thus possible delay, standing alone, is not a basis for refusing to certify this order for appeal. Further, the issue herein is a sharply defined, purely, legal issue, which the Court of Appeals should be able to hear and decide in a relatively expeditious manner.

45. Finally, Plaintiffs' speculation about possible trial delay focuses solely on a comparison between the potential harm to Plaintiffs caused by a § 1292(b) appeal and the potential harm to Caterpillar of no in-

terlocutory appeal. In making this comparison, Plaintiffs have overlooked the potential harm to this Court and the judicial system should resources be expended in a 50–day trial that could be obviated by an appellate court ruling. In short, any delay caused by a § 1292(b) appeal is clearly warranted given the potential savings in time and expense by all involved by having the release/ratification issue determined prior to any further expenditure of judicial resources.

III. CONCLUSION

In sum, the Court believes that to find that the Plaintiffs had a duty to tender back to Caterpillar the monetary consideration Caterpillar paid to them as a precondition for the Plaintiffs filing of the lawsuit, and/or that the failure of Plaintiffs to do so creates as a matter of law a bar to this suit because the omission constitutes a "ratification" of the release which each of the Plaintiffs signed, would eviscerate the implementation of the ADEA. This result would clearly be contrary to the purposes for which the ADEA was enacted by the Congress of the United States.

Therefore, the Court DENIES Caterpillar's Motion for Partial Summary Judgment and certifies this ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).